## No. 8846.

### FINDING *v*. OCEAN ACCIDENT AND GUARANTEE CORPORATION.

1. INSURANCE—*Construction of Policy.* All ambiguities are resolved in favor of the assured.
2. —— *Accident Policy Construed.* Insurance of the owner of a building against loss, by injury to any person in the car of an elevator, but excepting "any person engaged . . . in extraordinary repairs", but permitting ordinary repairs, "provided no elevator shall be run while it is undergoing such repairs." An employe of plaintiff was injured while riding upon the top of the car, engaged in cleaning the paint. *Held* not a repairing in the ordinary sense of the word, and that the insurer was liable.

Exceptions couched in words of doubtful meaning are not favored.

*Error to Denver District Court, Hon. John H. Denison, Judge.*

Messrs. HAYT, DAWSON & WRIGHT, for plaintiff in error.

Mr. JULIAN G. DICKINSON, and Mr. THOMAS E. WATTERS, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THIS action is to recover upon an employer's accident insurance policy, designated as "an elevator liability policy," issued by the defendant in error to the plaintiff in error.

The complaint alleges that at a time within the life of said policy one of his employes, Henry Gitzen, while in an elevator well or hoist-way of an elevator upon the premises described in the policy, and to which said policy relates, sustained bodily injuries from which he immediately died. That due notice was served upon the defendant; that thereafter the widow of Gitzen brought suit and recovered judg-

ment against the plaintiff in the sum of $5,000, which said judgment after appeal and affirmance by the Court of Appeals, the plaintiff paid. That said suit was defended by the defendant and through its counsel.

This action was to recover from the insurance company the amount of said judgment together with costs and expenses incurred.

The cause was tried to the court without a jury and judgment rendered in favor of the defendant.

The policy insured:

"Against loss from common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered while this policy is in force, by any person or persons while in the car of any elevator mentioned in the schedule hereinafter contained, or in the elevator well or hoist-way of same, or while entering upon or alighting from the elevator car. The foregoing General Agreement is made subject to the following Special Agreements, which shall be construed as conditions."

The special agreement upon which the defendant relies as exempting it from liability under the policy is as follows:

"This policy does not cover the loss from liability for injuries caused wholly or in part by: (A) Any elevator while in charge of any person contrary to law or ordinance, or any child under fifteen years of age; (B) Any elevator so constructed that it cannot be started, stopped and controlled by a person riding on the same; (C) Any person while making additions to, alterations in, or engaged in the construction, demolition or extraordinary repair of any such elevator or the building or structure in which it is contained; but ordinary repairs to any such elevator, its shaft or attachments, will be permitted provided no elevator shall be run or used while it or the shaft in which it is operated are undergoing repairs; (D) The explosion, collapse or rupture of any steam boiler."

The testimony shows that Gitzen was on and cleaning the top of the elevator at the time of the accident. That he had been so working while the elevator had made many trips. That he was cleaning off the paint by using a fluid applied with a brush to soften the paint, and then scraping it with a knife.

The only question at issue in the case is whether or not this work is to be construed as making repairs within the meaning of the special agreement or exception above quoted. In other words we must construe the work which Gitzen was doing to mean repairs within the plain meaning of the language of the policy.

It is a well settled rule that in case of ambiguity in any of the clauses of an insurance contract, such ambiguity is to be resolved in favor of the assured and against the insurance company. It was said in *Preferred Accident Ins. Co. v. Fielding,* 35 Colo. 19, 83 Pac. 1013, 9 Ann. Cas. 916. "It is now a well recognized rule that where the terms of a policy of insurance are not clear or are capable of two constructions, the one which is most favorable to the insured will be adopted."

Certainly in this case the most that can be said in favor of defendant's contention as to the clause under consideration is that it is capable of two constructions.

This rule is founded upon the fact that the contract is prepared by the insurance company, and for such reason no presumptions are to be indulged which favor the company. It is likewise held that the general purpose of the contract is full indemnity, and this should not be defeated except by clear and unambiguous limitations assented to by the parties. *Guarantee Co. v. Mechanics Savings Bank,* 80 Fed. 766, 26 C. C. A. 146.

Elaborating and citing authorities upon the rule of construction in case of insurance contracts, it is said in *Provident Life Assurance Society v. Cannon,* 103 Ill. App. 534;

"The construction of a contract for insurance as well as of other contracts is for the court. In the interpretation

of a contract, the purpose of the transaction between the parties must be rightly apprehended and the contract be so construed as to effect that purpose, if it be possible so to do, by giving to the language of the contract, as a whole, any reasonable meaning.   In Phillips on Insurance at Sec. 124, it is said:

'The predominant intention of the parties in a contract of insurance is indemnity, and this intention is to be kept in view and favored in putting a construction upon the policy.'

In May on Insurance, Vol. 1, 3d. Ed., at Sec. 174, it is said:

'Having indemnity for its object, the contract is to be construed liberally to that end, and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give. * * * Conditions and provisos will be strictly construed against the insurers because they have for their object to limit the scope and defeat the purpose of the principal contract.'

In Wood on Fire Insurance, at Sec. 59, it is said:

'It is the duty of the insurer to clothe the contract in language so plain and clear that the insured cannot be mistaken or misled. * * * Having the power to impose conditions and being the party who draws the contract, he must see to it that all conditions are plain, easily understood, and free from ambiguity. * * * Failing to employ a clear and definite form of expression, the benefit of all doubts will be resolved in favor of the assured.'

In Vol 1, 2d Ed., Wood, p. 145:

'If there is any doubt, in view of the general tenor of the instrument of writing, whether the words used therein are to be taken in an enlarged or restricted sense, all things being equal, that construction should be taken which is most beneficial to the promisee.   This rule of construction is especially applicable to the construction of policies of insurance."

It will be seen from the authorities cited, that words used in such contracts must be construed as being used in the scope of their ordinary and accepted meaning. In this sense, cleaning or scraping off an old coat of paint, or even painting itself is in no sense synonymous with repairing.

Webster defines the word "repair" in the sense here used, as "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction as to repair a house, a road, a shoe."

The word has been defined by courts and law writers as:

"A noun, a restoration to a sound state of what had gone into partial decay or dilapidation, or bettering what had been destroyed in part; restoration to a sound, a good or complete state after decay, injury, dilapidation, or partial destruction; restoration to a sound or good state after decay, waste, injury, or partial destruction; supply of loss; reparation; supply of loss; restoration after dilapidation. As a verb, to mend, to restore to a sound state what has been partially destroyed, to make good an existing thing; to restore to a sound or good condition, after injury or partial destruction; to restore to a sound or good state after decay, injury, dilapidation, or partial destruction; to replace or remake; to restore what has been impaired or injured; to restore to a sound state; to mend or refit; to mend, add to, or make over." 34 Cyc. 1336.

No authority is cited and we know of none where the words cleaning, scraping preparatory for painting, or even painting itself, has been construed as within the term "repairs." There are however authorities to the contrary.

In the English case of *Wood v. Walsh,* 1899 Q. B. Division 1009, where the question was directly involved as to whether a workman engaged in painting a house, was at a work of repair it was said:

"In other words, is painting the outside of a house to be considered as construction or repair within the ordinary meaning of those words? It is certainly not a work of construction; and, speaking for myself, I should certainly think

that neither construction nor repair of a house could mean merely outside painting.  The arbitor has found in the present case that nothing was being done to the house but preparation for painting and the actual painting; would any one using language in its ordinary sense call painting the repairing of his house?  If the legislature desired to bring this class of employment, which is a very well known one, within the purview of the Act, they would have done so in clear and unmistakable terms, instead of using language which, if given its ordinary meaning, operates to exclude it. The words "constructed or repaired" means some work relating to the structure of the building.  On this point, I think that the true construction of the section is that repair does not include painting."

The question is quite comprehensively discussed in the case of *Smith v. German Insurance Co.*, 107 Mich. 270, 65 N. W. 236, 30 L. R. A. 268.  The provision in the policy there involved, was that the insured was bound to obtain the indorsement of the company permitting repairs.  It was there held that repairs require the services of a mechanic while the painting of a building does not.  It was said:

"Webster defines the word 'Mechanic' as 'one skilled or employed in shaping and uniting materials, as wood, metal, etc., into any kind of structure, machine, or other object requiring the use of tools or instruments.'  The American Encyclopedic Dictionary defines the term as 'one who is employed or skilled in the construction of materials, as wood, metal, etc., into any kind of structure or machine; one who is skilled in the use of tools or instruments; one who follows a mechanical trade for his living.'  In Anderson's Law Dictionary the term is defined as 'a workman employed in shaping and uniting materials, such as wood or metal, into some kind of structure, machine, or other object requiring the use of tools.'  In Crabb's English Synonyms the distinction between a mechanic and a painter is drawn as follows: 'The mechanic is that species of artisan who works at arts purely mechanical, in distinction from

those which contribute to the completion and embellishment of any objects. On this ground a shoemaker is a mechanic, but a common painter is a simple artisan.' It is apparent that the common acceptance of the term 'mechanic' does not include painters, and that painting was not intended by the terms of this policy to be included in those repairs which required the assent of the company to be indorsed upon the policy."

It is apparent that under the rules of construction applicable to insurance contracts as above stated we can not say that the special agreement relied on avoids the general indemnity under the policy, without doing violence to the generally accepted meaning of the words used in such special agreement.

The indemnity provision in the contract is broad, sweeping, and stated in language that can not be misunderstood.

There is no good reason why the exception or special agreements with which it is hedged about should not be written in language with equally explicit meaning, and with equal freedom from the necessity of interpretation or construction by a court.

The purchaser of an insurance policy is required to do no more than to read its provisions in the light of the ordinarily accepted meaning of its words and terms.

The law does not look with favor upon exceptions to the plain provision of indemnity, couched in language of doubtful and uncertain meaning, and courts will not supply by implication a meaning to such an exception, not clearly and unmistakably expressed by its terms.

The prayer of the complaint seeks to recover certain sums incurred in the former litigation and otherwise.

We think the amount to be recovered in this case is the sum of $5,000, together with interest at the lawful rate from the date of payment thereof, to-wit: June 27th, 1913, by the plaintiff with costs, and the trial court is directed to enter judgment accordingly.

The judgment is reversed.

Hill, C. J., and Garrigues, J., concur.