## FRAZIER v. HAWKEYE CASUALTY CO.

### No. 2455.

United States District Court
D. Colorado.
July 8, 1949.

S. Philip Cabibi, Pueblo, Colo., for plaintiff.

Wolvington & Wormwood, Kenneth M. Wormwood, Denver, Colo., for defendant.

SYMES, District Judge.

The defendant, the Hawkeye Casualty Company, issued to the plaintiff its policy entitled "Owners', Landlords', and Tenants'" policy covering the apartment house owned and operated by the plaintiff Frazier at 311 W. 8th Street, Pueblo, Colorado, agreeing in general to indemnify and defend the insured from public liability.

On January 22, 1945, while the policy was in full force and effect, one Eva H. Edwards, a tenant, was injured. She stepped and fell on the icy sidewalk located on the premises. She brought an action in the state court for damages, alleging that her injury was caused by the landlord Frazier's neglect in allowing the sidewalk to become slippery and dangerous.

The defendant, the Hawkeye Casualty Company, defended the state court action, which resulted in a verdict against the plaintiff Mrs. Frazier, and in favor of Eva H. Edwards, for $4935.00.

The case was appealed to the Supreme Court of Colorado and affirmed. See Frazier v. Edwards, 117 Colo. 502, 190 P.2d 126. Whereupon plaintiff Frazier called upon the defendant, the Hawkeye Company, to satisfy said judgment. The latter denies liability under the policy. The plaintiff paid the judgment and called upon the insurance company to indemnify her for the loss. Again the insurance company denied liability under the policy, whereupon this action was filed in the state court, and removed here.

The plaintiff contends that the injury sustained by Eva H. Edwards, upon which the judgment in the state court was obtained, was not caused by or through any structural alterations upon the assured premises, and that the loss was within the coverage of the policy.

It appears that Mrs. Frazier entered into an oral contract with a contractor to do certain work upon the premises, including putting on a new asbestos roof and asbestos shingles on the siding, removing a downspout and putting up a new one, and doing other work, such as removing a wooden porch and replacing it with a concrete slab, and changing a couple of windows.

In the course of the work the downspout was removed and not replaced, and water dripping caused ice to form, which in turn caused the accident suffered by the tenant, Mrs. Edwards.

The defendant's contention is that it is not liable under the policy, because the same comes under an exclusion clause in the policy which reads as follows:

"This endorsement does not apply * * (4) to bodily injury or death caused by * * * (b) or through structural alterations, new construction or demolition work unless written permit for such work is attached; * * *."

No permit as called for was attached to the policy.

Our question is whether the removal of the downspout constituted a structural alteration, or was merely an ordinary piece of repair work for which no written permit was required.

The testimony in this court disclosed that the old downspout was "terribly decayed" and had to be replaced with a new one, and that the downspout was "full of old, rusty holes". This was not contradicted.

It is not necessary to cite authorities to the proposition that replacing a decayed spout with a new one is a repair job and not an alteration. The cases quoted by the defendant itself would so indicate.

It should also be observed that the defendant concedes in its brief that the taking down of the downspout "if that was the only act that had been done" would probably not be a substantial alteration. It is insisted, however, that the act of taking down the downspout was part of many other acts going into the structural alteration, and therefore was part of the same.

796

The court cannot agree that the simple removal of a decayed part can thus be tortured into a work of "alteration". It is hornbook law that in case of doubt every intendment shall be resolved in favor of the insured and against the insurer, where it is the latter that has drawn up the policy. See Finding v. Ocean Accident & Guarantee Corporation, 65 Colo. 332, 334, 177 P. 142.

The plaintiff is therefore entitled to judgment for the amount of the state court judgment of $4935.00, plus interest from June 18, 1946. The total amount, however, cannot exceed the $5000.00 limit stipulated in the policy.

Judgment is therefore awarded to the plaintiff, and against the defendant, in the sum of $5000.00 and costs.

Plaintiff will prepare and submit findings of fact and conclusions of law and form of judgment in conformity herewith.