A. G. WIMPY

v.

MARYLAND CASUALTY COMPANY.

No. 15398.

United States Court of Appeals
Fifth Circuit.

June 24, 1955.

Joe K. Telford, Telford, Wayne &
Smith, Gainesville, Ga., for appellant.

James A. Dunlap, W. P. Whelchel,
Dunlap & Dunlap, Gainesville, Ga., for
appellee.

Before RIVES and CAMERON, Circuit Judges, and DAWKINS, District
Judge.

DAWKINS, District Judge.

Appellant, a resident of Georgia, transacted business in Georgia and Florida.
Appellee wrote an insurance policy covering his workmen's compensation risk
in both states, for a one-year term beginning March 18, 1951. On December
3, 1951, because of the poor experience
on the policy, appellee cancelled it as provided therein, and later billed appellant
for $3,978 allegedly due as additional
premium under the terms of the "Retrospective Premium Endorsement Plan B"
contained in the policy. Appellant's refusal to pay brought on this suit for
the additional premium, and the appeal
is from the judgment for appellee as
prayed for.

At the time the policy was issued, appellant's payroll for the ensuing year
was estimated, and a "Deposit Advance
Premium" was computed and paid. The
policy provided for computation of the
"standard" premium on the basis of actual payroll determined by audit after
the policy period expired. However, the
endorsement which gave rise to this controversy provided for the computation
of a "retrospective" premium, calculated
to take into consideration the experience
on the policy, and made after its termination. In describing the method of
determining the retrospective premium,
the endorsement first stated that the
standard premium would be used as a

base, and then the following factors would be added together: (a) the "basic" premium [1] for each state; (b) the "incurred losses" [2] for each state; and (c) the percentage of the incurred losses pertaining to each state as shown in the "Loss Conversion Percentage column of the Table of States." The sum so derived would then be multiplied by the applicable tax multiplier [3] to obtain the retrospective premium.

The endorsement further provided that the company should make a computation of the retrospective premium based upon incurred losses valued as of a date six months after the termination of the policy. This computation was to be the final retrospective premium if all claims had been closed on that date, but otherwise the final retrospective premium was to be made based upon incurred losses valued as of a date eighteen months after the termination of the policy.

Finally, there were provisions relating to cancellation of the policy, as follows:

"5. Cancellation of Policy:

"(a) Cancellation by the Employer—In the event of cancellation by the Employer:

"(1) The standard premium for the period that the Policy is in force is to be computed at short rates in accordance with the table printed on the Policy.

"(2) The standard premium so computed shall be used to determine the basic premium.

"(3) The standard premium so computed shall be the minimum retrospective premium.

"(4) The maximum retrospective premium shall be based upon the standard premium computed pro

rata for the period that the Policy is in force extended pro rata to the normal expiration date of the Policy.

"(b) Cancellation by the Company—In the event of cancellation by the Company the standard premium for the period that the Policy is in force is to be computed on a pro rata basis and the retrospective premium shall be computed on the basis of such standard premium, provided, however, that in the event of cancellation by the Company because of non-payment of premium the maximum retrospective premium shall be based upon the standard premium computed pro rata for the period the Policy is in force extended pro rata to the normal expiration date of the Policy."

The proof shows that appellee computed the "incurred losses" as of May 31, 1952, which was actually three days less than six months after the cancellation of the policy. Included in that figure were actual paid losses and a reserve for future payments on the claim of one Rawls, one of appellant's employees, who had suffered the loss of a leg in a compensable accident in Florida during the life of the policy. The trial court found that under Florida law Rawls was entitled to a specified sum of money, payable in the future, as of the date on which the company calculated "incurred losses", and that the amount estimated as a reserve for the future payments of this claim accorded with the liability fixed by Florida law. Except for the inclusion of this reserve item, which will be discussed hereinafter, appellant does not complain about the computation of retrospective premium made by the company.

1. "The basic premium is that percentage of the standard premium stated in the Basic Premium column of the applicable Table of Rating Values."

2. "Incurred losses, under the Policy, shall mean the actual paid losses and the reserves as estimated by the Company for unpaid losses, excepting incurred losses arising out of operations the premi-

um for which is determined in accordance with the provisions of any other Retrospective Endorsement, Premium Discount Endorsement or Premium Return Plan Endorsement."

3. "The tax multiplier is the applicable factor stated in the Tax Multiplier column of the Table of States."

The trial court found that the retrospective premium was due under the policy and was properly calculated. Deducting the "deposit advance premium" previously paid by appellant from the actual premium as computed under the retrospective premium endorsement, the court found appellee to be entitled to recover the sum prayed for.

In attacking the judgment, appellant argues: (1) that Paragraph 5(b) of the policy, quoted above, should be interpreted to provide that when the policy is cancelled by the company for any reason other than non-payment of premiums, it is entitled only to the standard premium and may not compute the retrospective premium under the endorsement; and (2) if the judge were correct in applying the retrospective premium provisions, appellee may not recover because it has failed to prove estimated reserves as of the dates provided in the policy—June 3, 1952 and June 3, 1953.

■ We think the trial judge was correct in holding that Paragraph 5(b) did not limit appellee to recovery of the standard premium only. Like many provisions in insurance policies, its wording is cumbersome, but it clearly contemplates the application of the retrospective premium, for after providing for the computation of the standard premium on "a pro rata basis", it then states that the retrospective premium shall be computed "on the basis of such standard premium." We think the provisions must be read in connection with Paragraph 5(a); and when the section is read as a whole, we share the trial court's view that it is nothing more than the well-known and customary provision that when a policy is cancelled by the insured, the earned premium is computed on a "short-rate" basis, but cancellation by the company for any reason other than non-payment of premiums requires computation on a "pro-rata" basis. In the absence of a clear provision in the policy we perceive no sound reason to penalize the company for exercising its option to cancel; and we cannot accept appellant's argument that Paragraph 5(b) is so vague and ambiguous as to require its interpretation against appellee.

■ As previously stated, the only "reserve" item contained in appellee's computation of "incurred losses" was the reserve set up as of May 31, 1952, for future payments to Rawls. On the basis of affidavits admitted as evidence by agreement, the Court found that the amounts included as actually paid by the company were correct; and because of the nature of Rawls' injury and the provisions of Florida law, he concluded that the amount due by law less the amount paid him through May 31, 1952, proved the accuracy of the reserve on the company's books as of that date. Accordingly, he approved its calculation of "incurred losses" under the policy.

This is the only item in the whole computation to which appellant objects, and with respect to it, he does not dispute the amount to which Rawls was found to be entitled. As we understand his argument, it is only that the company cannot be held legally to have proved the accuracy of its "incurred losses" figure because its evidence related to May 31, 1952, rather than to June 3, 1952, as required by the policy.

If the facts disclosed that reserves on the company books varied from day to day, or were dependent upon variable factors in the minds of the company's employees, we could see considerable merit in holding appellee to the specific dates stated in the policy, but here we think appellant's argument is specious. Only Rawls' reserve was included, and the amount thereof was undisputed, indeed, definitely fixed by Florida law, according to the trial court's uncontested findings. It is readily apparent that three days later, the book reserve would have been exactly the same. Appellant has not revealed any facts to indicate how he could possibly be prejudiced by this technical violation of the policy pro-

visions, nor does he argue prejudice. Under the circumstances, we think the trial court's finding was right.

The judgment appealed from is

Affirmed.