No. 22035.
No. 22135.

THE TRAVELERS INSURANCE COMPANY AND THE TRAVELERS
INDEMNITY COMPANY *v.* JEFFRIES-EAVES, INC. OF
COLORADO.
(442 P.2d 822)

Decided July 1, 1968.

Wood, Ris & Hames, for plaintiffs in error.

Gorsuch, Kirgis, Campbell, Walker & Grover, C. E. Eckerman, for defendant in error.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

This writ of error is directed to an order of the District Court of the City and County of Denver granting defendant in error's motion for summary judgment. The parties appear here in the same order as in the trial court and will hereafter be referred to as plaintiffs and defendant.

Plaintiff insurance companies sued the defendant for $21,517.06 alleged to be due them on insurance policies issued to defendant. After various requests for admissions and exhibits had been filed, defendant moved for summary judgment as to three of the policies, upon which a total of $18,158.68 in premiums was alleged to be due. Plaintiffs moved for summary judgment in their favor on all nine policies. The trial court granted defendant's motion and entered a final judgment dismissing plaintiffs' claims on the three policies, in accordance with R.C.P. Colo. 54(b). We affirm.

The facts are not in dispute. The three policies in question were issued for a one-year period November 1, 1959

to November 1, 1960. Defendant paid the "standard" premium amounts which appeared on the face of each policy. The policies were not renewed by the plaintiffs at the end of the one-year period.

Attached to these policies was a "Retrospective Premium Endorsement — Three-Year — Plan D" covering all three policies. It provided for computation of "retrospective premiums" based on the loss experience of the insured over a three-year period. The $18,158.68 claimed by plaintiffs in this action was the net retrospective premium computed for the one-year period the three policies were in effect. Defendant contended that no retrospective premiums were due under clause 5 of the endorsement, which provides:

5. Cancelation. *The cancelation or non-renewal,* prior to the end of the three year period, *of any policy* designated in Table I *shall be deemed to be cancelation of the retrospective rating plan, and the premium* for insurance subject to Plan D *for the period such policies have been in force shall be computed in accordance with the other provisions of this endorsement,* provided:

(a) Cancelation by the name insured. In the event of cancelation by the named insured, (1) the standard premium shall be computed as the sum of the audited standard premium for all completed annual periods and the short rate standard premium for the period in which cancelation is effective; the minimum retrospective premium shall be the standard premium so computed; (2) in computing the maximum retrospective premium, the standard premium shall be computed as the sum of the audited standard premium to the date of cancelation and the estimated standard premium from the date of cancelation to the end of the three year period.

(b) Cancelation by the company. In the event of cancelation by the company because of non-payment of premium by the named insured, the maximum retrospective premium shall be computed on the basis of the audited standard premium from the beginning of the

three year period to the date of cancelation and the estimated standard premium for the balance of the three year period.

(c) Cancelation of part of insured's operations. Neither the insured nor the company may cancel the insurance applying to a part of the operations of the insured. (Emphasis added.)

The parties agreed that the provisos (a), (b) and (c) were not applicable to the fact situation here, but they are helpful in determining the interpretation to be given the general provisions of the clause.

The trial court accepted defendant's interpretation of this clause, that any failure to renew the policies before the end of the three-year period cancelled the "retrospective rating plan" entirely, leaving only the "standard" premium provisions in force. Under this interpretation, the "other provisions of this endorsement" under which the premium is to be computed are the "standard" premium provisions contained in the endorsement. Plaintiffs, however, contend that the "other provisions" referred to are the "retrospective" as well as the "standard" premium provisions of the endorsement, and that the phrase "cancelation of the retrospective rating plan" means prospective cancelation only.

The wording of this clause appears to be susceptible of either interpretation. In this situation, it becomes the duty of a court to examine the insurance contract as a whole, to determine if any of the other provisions might resolve the ambiguity. In so doing, the court must give the words of the contract a reasonable construction, such as intelligent business men would give to it. If the ambiguity remains, then longstanding decisions of this Court require that the contract be interpreted favorably to the insured, and strictly against the insurance company which is responsible for the ambiguity. *Columbian National Life Ins. Co. v. McClain*, 115 Colo. 458, 174 P.2d 348; *Shinall v. Prudential Ins. Co.*, 91 Colo. 194, 14 P.2d 183; *North American Acc. Ins. Co.*

*v. Cochran,* 74 Colo. 515, 223 P.28; *Finding v. Ocean Acc. & Guarantee Corp.,* 65 Colo. 332, 177 P.142.

 Applying these rules of construction to the clause in question here, we believe the trial court reached the correct result. The endorsement entitled "Retrospective Premium Endorsement — Three-Year — Plan D" contemplated an adjustment of the standard premium, up or down, within certain minimum and maximum limits, based on the loss experience of the insured *over a three-year period.* If the loss experience is good, the insured receives a reimbursement of a part of the standard premium paid. If the loss experience is poor, he must pay an additional premium. Proviso (a) says, in effect, that if the insured cancels the policy before the three-year period is up, he is not entitled to reimbursement even though his loss experience was good, and if his loss experience was poor, he is liable for "retrospective" premiums up to a maximum calculated as though the policy had remained in effect for the full three-year period. Under proviso (b), if the insurance company cancels because of nonpayment of premiums by the insured, the insured is entitled to any reimbursement he may have earned, but the maximum "retrospective" premium for which he may be liable is again calculated on the full three-year period, regardless of how long the policy actually was in effect.

Under the company's interpretation of clause 5, where the insured's loss experience in a single year was poor, as it was here, the company could terminate the policy and still collect an additional premium based on the insured's poor loss experience for that one year. This interpretation deprives the insured of the principal benefit of the plan, which allows him to average out his "retrospective" premiums based on his losses over a three-year period. If the company intended clause 5 to have this effect, then it should have said so, in clear and unambiguous language. In the absence of such language,

we will not presume that the insured intended to enter into so one-sided a contract.

Plaintiffs argue that their interpretation is fair because it would apply equally to a situation where the insured's loss experience had been good and he was entitled to a refund. It is not usual, however, for insurance companies to cancel contracts where the loss experience is good, and if the insured himself cancelled, he would not be entitled to any reimbursement under proviso (a). It should be noted that neither party has cited a single case arising out of a clause of the type involved here where a claim for reimbursement by the insured has been the issue.

The plaintiffs have cited cases from other jurisdictions which have interpreted the same or similar clauses in the manner they are advocating here. *Wimpy v. Maryland Casualty Co.,* 223 F.2d 649 (5th Cir.); *Zurich Ins. Co. v. Britt Trucking Co.,* 250 F. Supp. 324 (N.D. Tex.); *Bituminous Casualty Corp. v. Lewis Crane Service, Inc.,* 173 So. 2d 715 (Fla.). The first of these cases involves a clause whose wording is materially different from the clause in controversy here. *Zurich, supra,* relies heavily on regulations of the Texas Board of Insurance, but no comparable regulations have been cited in the instant case. *Bituminous Casualty, supra,* does involve substantially the same clause, but the decision rests in large measure on other provisions of the policies there involved, and in any event, we do not agree with the reasoning in that case. We do not believe the results of these cases can be reached under the general rules of construction of insurance contracts in force in Colorado, as cited above.

The judgment is affirmed.

MR. JUSTICE HODGES not participating.