**Gloria HUIZAR, Petitioner,**

v.

**ALLSTATE INSURANCE COMPANY, Respondent.**

**No. 96SC643.**

Supreme Court of Colorado, En Banc.

Feb. 2, 1998.

Law Office of Lloyd Kordick, Lloyd Kordick, Colorado Springs, Law Office of Joseph J. Archuleta, Joseph J. Archuleta, Trent T. King, Denver, for Petitioner.

Holland & Hart LLP, Brian Muldoon, Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

The issue presented by this case is whether a trial de novo clause in an uninsured motorist provision of an automobile insurance policy violates public policy.[1] The trial de novo clause allows the insured or insurer to demand a trial on the merits after arbitration when the amount awarded in the arbitration proceeding exceeds a specified limit. The trial court ruled that the trial de novo clause was unenforceable. The court of appeals

reversed the judgment. *See Huizar v. Allstate Ins. Co.*, 932 P.2d 839 (Colo.App.1996). We closely scrutinize the effect of the trial de novo clause for consistency with Colorado law and determine that it is in conflict with the public policy of this state. We therefore reverse and hold that the trial de novo clause is unenforceable.

I.

The petitioner, Gloria Huizar, was a passenger in an automobile driven by her neighbor, an uninsured motorist. The neighbor lost control of the automobile and hit a curb, slamming Huizar's head into the interior post and windshield of the vehicle. Huizar immediately experienced pain in her neck and head. After six days, she began medical treatment. Allstate Insurance Company, Huizar's insurer, paid her medical expenses pursuant to the personal injury protection coverage of her policy. Because of her neighbor's uninsured status, Huizar also looked to Allstate for her additional claims.

Huizar and Allstate were unable to agree about additional compensation under the terms of her uninsured motorist protection policy. Consequently, Huizar elected to invoke the arbitration clause in her insurance policy, which provides:

If [Huizar] or [Allstate] don't agree on [Huizar's] right to receive any damages or the amount, then at the request of either, the disagreement will be settled by arbitration.

After two days of arbitration proceedings, the arbiter awarded Huizar "$30,000 plus interest from the date of the accident and appropriate costs."

The arbiter's award exceeded the $25,000.00 minimum liability coverage required by Colorado's Financial Responsibility statute.[2] Allstate initiated an action in district court by filing a "motion for trial de novo" and naming itself as the defendant. The

---

1. We granted certiorari to consider, "Whether the court of appeals committed prejudicial error by upholding a 'trial de novo' provision in an Allstate automobile insurance policy as not contrary to public policy."

2. *See* § 10–4–706, 3 C.R.S. (1997).

motion was based on the trial de novo clause in Huizar's policy, which provides:

Regardless of the method of arbitration, when any arbitration award exceeds the financial responsibility limits in the State of Colorado [$25,000.00], either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award. Costs, including attorney fees, are to be paid by the party incurring them.

In response, Huizar moved to dismiss the action and requested that the trial court docket the arbiter's award pursuant to section 13–22–216, 5 C.R.S. (1997).

Huizar argued that the trial de novo clause unduly limited her ability to recover and was therefore contrary to the public policy of providing just compensation to victims injured by uninsured motorists. After additional briefing on the issue, the trial court denied Allstate's motion and held that the trial de novo clause was "patently unfair" to Huizar because it permitted Allstate "to litigate ... issues [of liability as well as damages] twice if it's not satisfied with the first decision." The trial court concluded that the trial de novo clause "limit[s] uninsured motorist coverage [and] is void against public policy."

Allstate appealed, and the court of appeals reversed, concluding that Colorado law does not specifically require binding arbitration for uninsured motorist claims. See Huizar, 932 P.2d at 840. Thus, the court of appeals held that the trial de novo clause does not violate public policy. We do not agree.

II.

Insurance policies, as several courts have observed, differ from ordinary, bilateral contracts. See Jones v. Horace Mann Ins. Co., 937 P.2d 1360, 1361 (Alaska 1997); Wiggam v. Associates Fin. Serv., Inc., 677 N.E.2d 87, 91 (Ind.App.1997); Rodman v. State Farm Mut. Auto. Ins., 208 N.W.2d 903, 905 (Iowa 1973); U.S. Fidelity & Guaranty, Co. v. Ferguson, 698 So.2d 77, 80 (Miss.1997). Because of both the disparity of bargaining power between insurer and insured and the fact that materially different coverage cannot

be readily obtained elsewhere, automobile insurance policies are generally not the result of bargaining. See Schmidt v. Midwest Fam. Mut. Ins. Co., 426 N.W.2d 870, 874 (Minn.1988) (recognizing that although an insurance policy may not technically qualify as a contract of adhesion, it possesses some of the earmarks of an adhesive contract). Instead, the provisions in a policy are often imposed on a take-it-or-leave-it basis. It is not a negotiated contract but one with terms required by legislation or dictated by the insurer. Thus, courts have assumed a "heightened responsibility" to scrutinize insurance policies for provisions that unduly compromise the insured's interests and have concluded that any provision of an insurance policy which violates public policy and principles of fairness is unenforceable. See Milbank Ins. Co. v. Henry, 232 Neb. 418, 441 N.W.2d 143, 148 (1989); Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255, 1260 (1992).

We have previously recognized that "a contractual provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy." FDIC v. American Cas. Co., 843 P.2d 1285, 1290 (Colo.1992) (citing University of Denver v. Industrial Comm'n, 138 Colo. 505, 509, 335 P.2d 292, 294 (1959)). We have extended this principle to the conditions and terms of an insurance contract that undermine legislatively-expressed public policy. See, e.g., Meyer v. State Farm Mut. Auto. Ins. Co., 689 P.2d 585, 589 (Colo.1984) (household exclusion in automobile liability policy held invalid as contrary to public policy expressed in Colorado Auto Accident Reparations Act); Newton v. Nationwide Mut. Fire Ins. Co., 197 Colo. 462, 468, 594 P.2d 1042, 1046 (1979) (insurance policy provision which permitted insurer to subtract PIP payments from uninsured motorist coverage so as to reduce that coverage to less than statutory minimum violative of public policy in Colorado Auto Accident Reparations Act).

In Allstate Insurance Co. v. Avis, 947 P.2d 341 (Colo.1997), we held that competing excess clauses would not be enforced, even in the absence of a direct expression of public policy or a specific statute addressing the

issue and despite freedom of contract, because "an unintended consequence or absurdity contrary to public policy would result." *Id.* at 346. In *Avis*, we examined not only the facial validity of a clause in the insurance policy, but the result created by the operation of a provision of the policy in particular circumstances. We determined that Colorado's insurance laws favor adequate, fair and timely resolution of claims. *See id.* Similarly, here we do not confine ourselves to scrutinizing the insurance policy on its face, but we also examine whether the effects created by the operation of the trial de novo clause are consistent with public policy. We consider public policy derived from several sources and take an integrated approach to understanding public policy as it affects the resolution of disputes involving uninsured motorist claims.

We begin our analysis by considering the pertinent public policies within the automobile insurance context. Next, we examine the effects created by the operation of the trial de novo clause and we closely scrutinize the de novo clause for consistency with public policy.

## III.

The following public policies are pertinent to a consideration of the trial de novo provision: (1) the policy against dilution of the uninsured motorist coverage evinced by the adoption of section 10–4–609, 3 C.R.S. (1997), (2) the policy against undue delay in access to the courts and in favor of speedy resolution of disputes contained in Colorado Constitution Article II, Section 6, and (3) the policy in favor of encouraging arbitration as an alternative to litigation embodied in Colorado Constitution Article XVIII, Section 3 and in sections 13–22–201 to –223, 5 C.R.S. (1997).

## A.

The General Assembly enacted the Motor Vehicle Financial Responsibility Act (Act) in 1965 to "assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." Ch. 91, sec. 1, 1965 Colo. Sess. Laws 333 (declaration of purpose). The current uninsured motorist statute requires insurers to offer uninsured motorist coverage under the liability provisions of an automobile insurance policy.[3] *See* § 10–4–609, 3 C.R.S. (1997). Uninsured motorist insurance ensures that victims injured by an uninsured motorist recover as if they had been injured by a driver covered by the required liability insurance. *See Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 60–61 (Colo.1990); *Alliance Mut. Cas. Co. v. Duerson,* 184 Colo. 117, 124, 518 P.2d 1177, 1181 (1974) (legislative intent is satisfied by recovery which assures that an injured motorist will be compensated at least to the same extent as one injured by a motorist who is insured in compliance with Motor Vehicle Financial Responsibility Act); *Briggs v. American Family Mut. Ins. Co.,* 833 P.2d 859, 861 (Colo.App.1992) (the purpose of uninsured motorist coverage is to compensate insureds for losses caused by negligent and financially irresponsible motorists).

■ An insurance policy provision is void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *Meyer v. State Farm Mut. Auto. Ins. Co.,* 689 P.2d 585, 589 (Colo.1984) (superseded by statute as stated in *Allstate Ins. Co. v. Feghali,* 814 P.2d 863, 865–66 (Colo.1991)); *but see Kral v. American Hardware Mut. Ins. Co.,* 784 P.2d 759, 766 (Colo.1989) (plaintiff is entitled to the benefits of coverage only "to the extent necessary to fully compensate the insured for the loss, subject to the limits of the insurance contract").

In *Kral,* we held that a subrogation clause contained in an insurance policy and a release-trust agreement executed pursuant to the subrogation provision were enforceable only to the extent that they did not impair the ability of the insured to gain full compensation for any loss caused by the conduct of an uninsured motorist. *See Kral,* 784 P.2d at 765–66. Thus, Colorado courts have held

---

3. However, the insured may reject uninsured motorist coverage. *See* § 10–4–609(1), 3 C.R.S. (1997).

unenforceable those insurance policies which operate to significantly dilute uninsured motorist coverage. *See Terranova*, 800 P.2d at 63; *Newton*, 197 Colo. at 465, 594 P.2d at 1043; *Briggs*, 833 P.2d at 862 (recognizing that an insurer's attempt to dilute uninsured motorist coverage through a consent-to-sue clause is an impermissible burden to recover damages).

### B.

 The public policy of this state, as expressed in the Colorado Constitution, favors both access to the courts and timely resolutions of claims. Article II, Section 6 of the Colorado Constitution provides that "[c]ourts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay." We have recognized that Article II, Section 6 of the Colorado Constitution ensures the availability of a judicial forum to effectuate a right if that right has accrued under the law. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 (Colo.1992); *Sigman v. Seafood Ltd. Partnership I*, 817 P.2d 527, 533 (Colo.1991); *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo.1991).

 A burden on a party's right of access to the courts does not violate this public policy provided the burden is reasonable. *See People v. Spencer*, 185 Colo. 377, 381–82, 524 P.2d 1084, 1086 (1974) ("In a proper case . . . the right of free access to our courts must yield to the rights of others and the efficient administration of justice."). For example, in *Firelock Inc. v. District Court*, 776 P.2d 1090, 1096 (Colo.1989), we determined that the Colorado Mandatory Arbitration Act [4] did not deny the right of access to the courts. We specifically found that the requirement that a prevailing party pay costs of arbitration up to $1,000.00 if the party did not increase its position by at least 10% did not place an unreasonable burden on this right. *See id.*

### C.

 Arbitration as a method of alternative dispute resolution is a convenient mode of resolving disputes and is favored by the public policy of Colorado. *See* Colo. Const. art. XVIII, § 3; *see also City & County of Denver v. District Court*, 939 P.2d 1353, 1362 (Colo.1997); *Dominion Ins. Co. v. Hart*, 178 Colo. 451, 454, 498 P.2d 1138, 1140 (1972); *Ezell v. Rocky Mountain Bean & Elevator Co.*, 76 Colo. 409, 412, 232 P. 680, 681 (1925); *Wilson v. Wilson*, 18 Colo. 615, 620, 34 P. 175, 177 (1893).

The General Assembly adopted the Uniform Arbitration Act (UAA) in 1975 to reflect its endorsement of arbitration. *See* §§ 13–22–201 to –223, 5 C.R.S. (1997). The General Assembly adopted the UAA to (1) validate arbitration agreements, (2) assure an effective arbitration process, (3) provide necessary procedural safeguards, and (4) provide an efficient procedure when judicial assistance is necessary. *See* § 13–22–202, 5 C.R.S. (1997).

In *State Farm Mutual Automobile Insurance Co. v. Broadnax*, 827 P.2d 531, 535–37 (Colo.1992), we rejected constitutional challenges to a statute requiring binding arbitration in disputes involving personal injury protection benefits. Our decision in *Broadnax* was based on our observation that the arbitration award was subject to the limited judicial review provided for in the UAA, rather than de novo review.

In *Broadnax*, we reviewed the Connecticut Supreme Court's consideration of the Connecticut mandatory arbitration statute, which employed a similar limited judicial review. *See Broadnax*, 827 P.2d at 537 (quoting *Chmielewski v. Aetna Cas. & Sur. Co.*, 218 Conn. 646, 591 A.2d 101, 109 (1991)). The *Chmielewski* decision acknowledged that de novo review of an arbitration proceeding is inconsistent with the purposes of binding arbitration, which are "avoiding congestion of the courts with piecemeal litigation and leveling the playing field by avoiding the risks that insurers would use their superior economic resources by subjecting claims for coverage to undue litigation." *See Chmielewski*,

---

4. *See* §§ 13–22–401 to –409, 6A C.R.S. (1987), *repealed by* § 13–22–411, 5 C.R.S. (1997).

591 A.2d at 109. We also recognized in *Broadnax* that de novo review may also render arbitration proceedings " 'merely way stations to the courts, and would thereby create the very risks the compulsory arbitration provision was designed to avoid.' " *Broadnax*, 827 P.2d at 537 (quoting *Chmielewski*, 591 A.2d at 109). Thus, we have previously acknowledged that de novo review of arbitration proceedings may frustrate the public policy goals of arbitration.

## IV.

■ The arbitration provision in this case results in mandatory arbitration when invoked by either party. The Allstate policy also provides that an arbitration award not exceeding the limits of Colorado's financial responsibility law ($25,000.00) is binding upon the parties.[5] However, an award exceeding $25,000.00 is not binding if either party elects to have the issues tried de novo in a court of competent jurisdiction.

The practical effect of a party's exercise of its right in the policy to a trial de novo is to render the completed arbitration proceeding meaningless because the policy provides for a trial de novo on all issues. Thus, the arbiter's determination of liability, the amount of damages, and the awarded costs are all subject to a trial de novo. Nothing is preserved from the arbitration process to be utilized at a subsequent proceeding.

We are not only concerned with the fairness of the clause on its face, but also with the unfairness of its application. Although the insurance policy seemingly puts the insurer and the insured on equal footing because either party can demand a trial de novo, as a practical matter the trial de novo clause may unfairly favor the insurer. *See* 3 Irvin E. Schermer, *Automobile Liability Insurance* § 49.12 (3d ed.1995) (explaining that "an arbitrator's award exceeding the state's financial responsibility limits would be challenged by the insurer, and thus such provisions only benefit the insurer"). Many jurisdictions which have found identical trial de novo clauses *contrary to public policy* have

concluded that the clause favors the insurer because it is unlikely that the insured would ever seek to avoid a high award, even if the award was lower than the insured's expectation, due to the additional expense and the risk of failing to obtain a higher award. *See Worldwide Ins. Group v. Klopp*, 603 A.2d 788, 791 (Del.1992) (recognizing that "[w]hile high awards may be appealed by either party, common experience suggests that it is unlikely that an insured would appeal such an award"); 3 Irvin E. Schermer, *Automobile Liability Insurance* § 49.12 (1995) (noting that "[i]t would be difficult to envision a situation in which an insured would be willing to gamble away a favorable decision on both liability and damages ... where he could wind up a total loser at the end of trial"); *see also O'Neill v. Berkshire Mut. Ins. Co.*, 786 F.Supp. 397, 399 (D.Vt.1992) (applying Vermont law); *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 472 N.E.2d 1061, 1063–64 (1984).

In this case, Huizar invoked the arbitration clause, thus requiring Allstate to participate in arbitration, and requiring both parties to be bound by the arbitration if the award did not exceed $25,000.00. Allstate made no attempt to avoid arbitration, nor could it avoid arbitration consistent with the policy. Huizar's counsel explained to this court at oral argument that Huizar requested arbitration rather than filing her claim in district court because of her expectation that Allstate would forestall any court proceedings she initiated by requesting arbitration. According to Huizar, since she would have been required to arbitrate by Allstate anyway, requesting arbitration was necessary to make progress toward resolution of the dispute. Regardless of the accuracy of Huizar's expectation, under the insurance policy arbitration became mandatory for both parties once she requested it.

After Allstate invoked the trial de novo clause, the parties were subjected to new proceedings in a separate forum, increased

---

5. The policy provides:
Regardless of the method of arbitration, any award not exceeding the limits of the Financial

Responsibility Law of Colorado [$25,000] will be binding and may be entered as a judgment in a proper court.

costs, and delayed resolution of the dispute.[6] Because nothing survived from the arbitration, the proceeding was reduced to a meaningless exercise or, at best, a non-binding guide to evaluating the claim for settlement purposes. Our inquiry is whether this effect of the trial de novo clause offends the previously discussed public policy.

◼ Not every deviation in uninsured motorist coverage from the protection an insured would be provided if the uninsured motorist was insured constitutes an impermissible attempt to dilute uninsured motorist coverage in violation of public policy. *See, e.g., Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1063 (Colo.1994) (recognizing that an insurer may aggregate the amount of damages from multiple insureds for purposes of calculating the amount of benefits due under insurance motorist coverage without violating public policy). *But see Newton v. Nationwide Mut. Fire Ins. Co.*, 197 Colo. 462, 468, 594 P.2d 1042, 1046 (1979) (insurance policy provision which permitted insurer to subtract PIP payments from uninsured motorist coverage so as to reduce that coverage to less than statutory minimum violative of public policy in Colorado Auto Accident Reparations Act). An insurance policy provision is void and unenforceable, even if unambiguously written, when the effect of the contractual provision is to dilute or avoid legislatively mandated coverage. *See Terranova*, 800 P.2d 58, 60 (Colo.1990). On its surface the exercise of the trial de novo right under the policy does not directly dilute uninsured motorist coverage because the amount of the available coverage and the possible award does not change by proceeding to trial. However, when an insurer invokes the trial de novo clause, the amount that the insured victim ultimately recovers is necessarily reduced. The insured will incur additional expenses, such as witness fees, attorney fees, process fees, arbiter fees, and other costs of presenting a case, not to mention the unquantifiable hardship of prolonging a final resolution of the case. That these costs may be substantial is evidenced by the fact that Huizar already incurred over three thousand dollars in similar costs at arbitration.

Furthermore, the interference here with a party's access to the courts and speedy resolution of its legal claims is unreasonable. Invoking one's right to an arbitration proceeding ultimately has no impact or effect other than to interfere with and delay access to the courts and dilute uninsured motorist coverage. The Colorado Mandatory Arbitration Act, reviewed in *Firelock*, required the party demanding trial de novo to pay the costs of arbitration up to $1,000.00 if the party did not increase its position by at least 10%. *See* § 13–22–405(3), 6A C.R.S. (1987), *repealed by* § 13–22–411, 5 C.R.S. (1997). Here, no such consequence attaches to a request for a trial de novo, and, hence, the parties are not discouraged from needlessly requesting a trial. Under the clause, the dissatisfied party may unilaterally render the entire arbitration meaningless by requesting a trial de novo. When considered in the uninsured motorists insurance context, this unproductive delay is entirely inconsistent with the public policy in favor of a speedy resolution of disputes.[7]

A number of our cases reflect this State's dedication to the strong public policy of favoring arbitration because it provides the parties thereto with a convenient, speedy, and efficient alternative to litigation. *See City & County of Denver v. District Court*, 939 P.2d at 1362; *Judd Constr. Co. v. Evans Joint Venture*, 642 P.2d 922, 924 (Colo.1982); *Columbine Valley Constr. Co. v. Roaring Fork Sch. Dist.*, 626 P.2d 686, 690 (Colo. 1981); *Ezell v. Rocky Mountain Bean & Elevator Co.*, 76 Colo. 409, 411, 232 P. 680, 681 (1925). While an arbitration clause is not

---

**6.** The policy's arbitration provision provides that each party must pay their own litigation expenses, each party must select and pay for one arbitrator and split the expense of a third arbitrator, and both parties must share the expense for transcript preparation.

**7.** Courts in several other states have invalidated this type of provision because of the resultant increase in cost and delay. *See Field v. Liberty Mut. Ins. Co.*, 769 F.Supp. 1135 (D.Haw.1991); *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992); *Slaiman v. Allstate Ins. Co.*, 617 A.2d 873 (R.I.1992); *Goulart v. Crum & Forster Personal Ins. Co.*, 222 Cal.App.3d 527, 271 Cal.Rptr. 627 (1990).

against public policy merely because it permits nonbinding arbitration, *see Water Works Employees Local 1045 v. Board of Water Works,* 44 Colo.App. 178, 615 P.2d 52 (1980), the public policy of encouraging arbitration is not served by a meaningless proceeding which unreasonably interferes with court access and dilutes uninsured motorist coverage. Furthermore, the increases in costs and delay, coupled with the fact that there is no corresponding benefit derived therefrom, are inconsistent with the public policy of providing an efficient procedure for the resolution of legal claims. *See* § 13–22–202, 5 C.R.S. (1997).

Pursuant to the UAA, parties agreeing to arbitration may agree to a form of arbitration which differs from that provided in the UAA. *See* § 13–22–202, 5 C.R.S. (1997). The UAA provides for a method of selecting arbiters, for a majority vote of the arbiters to exercise their power, and for a method of conducting the hearing. *See* §§ 13–22–202 to –205, 5 C.R.S. (1997). The UAA also provides that the parties may make different arrangements for selecting arbiters, exercising the power of the arbiters, and conducting the hearing. *See* §§ 13–22–205 to –207, 5 C.R.S. (1997). Similarly, the UAA provides for notice of the award and authority to award expenses and fees, unless the parties otherwise agree. *See* §§ 13–22–210 and –212, 5 C.R.S. (1997). The UAA also provides for a limited appellate-like review of the arbiter's award. *See* §§ 13–22–213 to –216, 5 C.R.S. (1997).

Under the insurance policy, if an award does not exceed $25,000.00, it may either be confirmed as provided by section 13–22–213, vacated on the specific grounds provided for in section 13–22–214, or modified for the specific reasons provided for in sections 13–22–214 to –215. After such limited review, it may be reduced to a judgment and enforced. *See* § 13–22–216, 5 C.R.S. (1997).[8]

The effect of the trial de novo clause here would be to allow the parties to establish a condition which determines whether the arbitration award is subject to the judicial review

provided for in sections 13–22–213 to –215. Under the insurance policy, if an award exceeds $25,000.00, then the effect of the trial de novo clause is to expand a court's traditional limited powers of review in favor of de novo review. Although the trial de novo clause is couched in terms of a "right" to a trial de novo, it effectively subjects the arbiter's award to de novo review. Thus, where an award exceeds $25,000.00, the trial de novo clause effectively changes the limited jurisdiction of the court to conduct a review by giving it general jurisdiction to conduct a trial de novo.

We note that the UAA does not expressly permit contractual deviation from its judicial review procedures. Thus, the UAA neither expresses nor implies a public policy in favor of the use of a trial de novo clause. Regardless of whether or not the trial de novo clause conflicts with UAA appellate review procedures, the increases in cost and delay are inconsistent with the public policy of providing an efficient procedure for court review of arbitration. *See* § 13–22–202, 5 C.R.S. (1997).

■ Because of the unique nature of insurance policies, we closely scrutinize their operation for consistency with public policy. Applying this heightened scrutiny and considering the potential unequal impact of the trial de novo clause, we find that by invalidating arbitration which has already been completed, it needlessly increases costs, dilutes uninsured motorist coverage, impedes timely resolution of claims, unreasonably burdens the right of access to the courts, and renders arbitration a less effective means of dispute resolution. While no single statement of public policy contained in any statutory or constitutional law directly prohibits the trial de novo clause in the insurance policy before us, the de novo clause violates the public policy of Colorado favoring fair, adequate, *and timely resolution of uninsured motorist claims.*

---

8. This limited review was essential to our rejection of constitutional challenges to statutory binding arbitration of personal injury protection

disputes in *Broadnax. See Broadnax,* 827 P.2d at 537.

## V.

We hold that the trial de novo clause is unenforceable. Therefore, it may not be relied upon by either party to demand a new trial after arbitration has been completed and an award rendered. Accordingly, the judgment of the court of appeals is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

SCOTT, J., dissents, and VOLLACK, C.J., joins in the dissent.

KOURLIS, J., does not participate.

Justice SCOTT dissenting:

Judicial restraint and the principles of freedom of contract dictate that courts give effect to the express terms of commonplace contracts, even under circumstances in which there may be a disparity of bargaining power, so long as the contract is not a contract of adhesion. The majority, however, refuses to enforce express provisions of a contract of insurance, not on the basis of any inexorable legislative enactment, but based upon a "public policy" it has judicially "derived from several sources." Maj. op. at 345. Because the majority does not say how its process of deriving such a public policy is to be cabined or indicate any limitations upon the power it exercises, I cannot join its opinion nor its

judgment and, consequently, I respectfully dissent.

Moreover, while the majority states its intention to "examine the effects created by the operation of the trial *de novo* clause" for "consistency" with Colorado public policy, maj. op. at 345, the majority acts without any evidence or factual findings in the record of such "effects" and assumes facts necessary as a predicate to its judgment. At the same time, the majority imports decisions from other jurisdictions, relying upon the work of courts in Arkansas, Delaware, Indiana, Iowa, Missouri, Minnesota, Nebraska, New Jersey, Ohio, and Vermont. While the decisions in those states are worthy of note, I believe policies not found in our constitution or expressly stated by the Colorado General Assembly do not constitute Colorado law. Therefore I disagree with the means employed by the majority to reach its judgment.

The majority has not identified an express provision in our statutes nor has it set forth a factual basis in the record for striking down the trial *de novo* clause in its entirety. The majority indicates it is "not only concerned with the fairness of the [trial *de novo* ] clause on its face, but also with the unfairness of its application," maj. op. at 347. While such concern is appropriate, I am unable to find in the record before us any facts showing how Allstate has applied the clause. In light of the absence of a factual record before us,[1]

---

1. The absence of a factual record in this case was clarified during oral arguments by attorneys for both parties:

 Justice Martinez: [Y]ou have relied on a lot of very good, well-reasoned arguments about the practical implications of this and how it really works out there. Is there any development of that below, do we have any factual record upon which we could rely to go beyond theoretical even-handedness here to look at the practical implications and how it is actually being used?

 Mr. Kordick: I am not aware this was ever the subject of any kind of fact finding.
 . . . .

 Justice Bender: Mr. Muldoon, was there any factual development on this issue? I understand the legal argument you are making ... but in the trial court, ... are there any facts that established that this provision is used by your client in almost every case where the award is over $25,000?

 Mr. Muldoon: Your honor, that was a point made by Justice Martinez, I believe just a moment

ago, and the answer is, no, your honor. There was no record in this matter to substantiate a number of statements just made by counsel. . . . No, your honor, no record.

 Justice Bender: Right. I think that was very clear. There is no record. . . . Have you made any representations or your client made any representations in the course of this proceeding which deal with [how Allstate uses or has used the provision], and if so, what are they?

 Mr. Muldoon: No, your honor, there has been no investigation into that issue and no representations made to a court or to parties as to the frequency of the use. We don't know if it is the insureds that make more use of the right to trial or not.
 . . . .

 Justice Bender: Mr. Muldoon, in your brief you say that there are very few cases in which a trial de novo is requested. . . . Is there any evidentiary basis for that? Do we know anything about that? Did you know anything about that?

while it may be reasonable to be persuaded by the analysis of courts outside Colorado and the law of those jurisdictions, it is quite another matter to impute to parties before us facts and conduct that cannot be found in the record of this case and then to rely upon that conduct of others as a basis for our judgment. Surely such reliance by this court raises serious issues of due process.

Finally, I want to make clear that I share many of the majority's concerns about the contract provision in this case. My concerns exist because of sympathy for the predicament of the insured and due respect for the plain language of our statute prohibiting the dilution of uninsured motorist coverage, as adopted by our General Assembly. *See* § 10–4–609, 3 C.R.S. (1997). Therefore, in my view, the better reasoned and more appropriate result here would be not to eviscerate the entire trial *de novo* clause, but rather to enforce the clause as permitted by Colorado law. I would hold that an insurer may choose to demand a trial *de novo*, but only conditionally. As a cost of the insurer's choice to proceed to trial and in order to avoid diluting uninsured motorist coverage guaranteed by section 10–4–609, 3 C.R.S. (1997), I would further hold that the insurer must first pay the insured's arbitration costs as a condition precedent to pursuing its right to a judicial resolution of the dispute between the insurer and its insured.

## I.

### A.

The majority's recitation of the facts omits certain details that I consider important to the resolution of this case. As the majority notes, the uninsured motorist provision of the policy provided a dispute resolution mechanism calling for arbitration at the request of either party. The policy goes on, however, to state that:

> If either party objects, the following method of arbitration will be used instead. The

insured person will select one arbitrator. [Allstate] will select another. The two arbitrators will select a third. If they cannot agree on a third arbitrator within 30 days, the judge of a court of record in the county of jurisdiction where arbitration is pending will appoint the third arbitrator. The written decision of any two arbitrators will determine the issues. The insured person will pay the arbitrator that person selects. [Allstate] will pay the one [Allstate] select[s]. The expense of the third arbitrator and all other expenses of arbitration will be shared equally. However, attorney fees and fees paid to medical and other expert witnesses are not considered arbitration expenses. These costs will be paid by the party incurring them.

Regardless of the method of arbitration, any award not exceeding the limits of the Financial Responsibility Law of Colorado [$25,000] will be binding and may be entered as a judgment in a proper court.

Regardless of the method of arbitration, when any arbitration award exceeds the financial Responsibility limits in the State of Colorado [$25,000], either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award. Costs, including attorney fees, are to be paid by the party incurring them.

Although her claim for additional benefits exceeded the $25,000 Financial Responsibility limits anticipated by the trial *de novo* provision of the Allstate policy, it was Gloria Huizar and not Allstate, who demanded arbitration. Huizar elected to proceed to arbitration despite the fact that the third paragraph of the Allstate policy only made binding those awards of $25,000 and less. As the language quoted above indicates, the arbitration proceeding was subject to the rules of the American Arbitration Association (AAA). Under those rules, an arbitrator may award costs against either party.[2]

---

Mr. Muldoon: [T]here's no record and no development of statistics to actually support that.

2. The AAA rules provide:

The expenses of witnesses for either side shall be paid by the party producing such witnesses.

All other expenses of the arbitration, including ... the expenses of any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they shall agree otherwise or unless the arbitrator in the award assesses such ex-

On December 9, 1994, after a two-day hearing, the arbitrator issued an order awarding Huizar "$30,000 plus interest from the date of the accident and appropriate costs." On January 30, 1994, the arbitrator issued a second order awarding costs in "the sum of $3,319.88 plus statutory interest from the date of the accident." The arbitrator's orders confirmed that Allstate had paid all medical expenses and stated that Huizar "asserts no lost wage claim" and sought no compensation for "medical expenses." During oral argument, neither attorney was able to answer questions about the arbitration proceedings in detail, other than to confirm that Huizar sought an award well in excess of $25,000.

In denying Allstate's motion for a trial *de novo*, the district court ruled that "the policy provision limiting uninsured motorist coverage is void against public policy." Finding the insurance provision "patently unfair" to Huizar because it "allows [Allstate] to litigate ... issues [of liability as well as damages] twice if it's not satisfied with the first decision," the court found the provision unenforceable.

### B.

The majority correctly notes that "Allstate Insurance Company, Huizar's insurer, paid her medical expenses" and that "Huizar also looked to Allstate for her additional claims." Maj. op. at 343. In fact, Allstate paid all of Huizar's medical expenses and costs of her injury, an amount in excess of $7,000. The basis of Huizar's claim for additional damages is not entirely clear, although the arbitrator alluded to evidence indicating that Huizar suffers from ongoing pain as a result of her injuries.

### II.

A public policy challenge to enforcement of a contractual term requires an examination of the various sources of public policy in the State of Colorado, such as the state or federal constitution, statutes, or administrative regulations and professional ethical codes that are "sufficiently concrete" to give notice of a public duty. *See Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 525–26 (Colo.1996) (discussing potential sources). When a contract term contravenes, frustrates, or interferes with the goals of a clearly stated public policy of the State of Colorado, it is void. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo.1992) (freedom of contract yields where public policy is "clearly expressed" or "specific statute" bars enforcement); *Corbin v. Sinclair Mktg., Inc.*, 684 P.2d 265, 267 (Colo.App.1984) (conflict with "broad, general statement" of public policy insufficient to avoid enforcement) (citation omitted).

The majority contends that the trial *de novo* clause runs afoul of the public policy expressed in our constitution and insurance statutes, namely: (1) the policy against dilution of the uninsured motorist coverage evinced by the adoption of section 10–4–609, 3 C.R.S. (1997); (2) the policy against undue delay in access to the courts and in favor of speedy resolution of disputes contained in Colo. Const. art. II, § 6; and (3) the policy in favor of arbitration embodied in Colo. Const. art. XVIII, § 3. Instead of explaining how the trial *de novo* provision runs afoul of any of the identified policies, the majority simply alludes to "public policy derived from several sources" as a collective whole. *See* maj. op. at 345.

As to each arguably relevant public policy, I believe, we must analyze whether the trial *de novo* provision conflicts with the explicit purposes or objectives of the identified legislative enactment or constitutional policy. *See* maj. op. at 346. I have no objection to considering how a contractual term might "operat[e]" to frustrate a specific public policy "in particular circumstances," maj. op. at 345, but the majority's approach is something entirely different. The majority can identify no direct conflict with any expressly stated public policy, yet proceeds to strike down the trial *de novo* clause based on an inquiry into

penses or any part thereof against any specified party or parties.

American Arbitration Association, *Accident Claims Arbitration Rules* 14 (Jan. 1, 1994); *see* *also* American Arbitration Association, *Dispute Resolution Procedures for Insurance Claims* 10 (Jan. 1, 1994) (including parallel provision for award of costs).

the unarticulated values underlying—and purportedly unifying—a disparate set of legislative pronouncements and state constitutional provisions. I am persuaded that the trial *de novo* provision is in direct conflict with public policy, at least when it operates to force an insured to pay the costs of litigating a claim twice, and I think the court's holding should be limited accordingly.

## A.

By enacting section 10–4–609, the General Assembly established as public policy of Colorado that an insured who purchases uninsured motorist coverage and is injured by an uninsured driver is entitled to benefits to the same extent as the insured would be compensated if injured due to the negligence of an insured motorist. *See Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 763–64 (Colo.1989).

Auto insurers in Colorado are required by statute to offer their policyholders at least $25,000 in coverage for damages caused by accidents involving uninsured motorists. *See* § 10–4–609, 3 C.R.S. (1997); § 42–7–103(2), 11 C.R.S. (1997). The purpose—that is to say, the public policy—behind this statute is to ensure that victims of auto accidents will be able to look to their own insurers to recover for their injuries when the driver at fault cannot be located or is financially irresponsible. *See Kral*, 784 P.2d at 763. Any provision that attempts to dilute, condition, or unduly limit uninsured motorist coverage so that it provides less compensation than that available for injury at the hands of an insured negligent driver is void. *See Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60–61 (Colo.1990). In other words, such provisions may not be enforced if they frustrate the public policy of ensuring that victims injured by uninsured motorists are able to recover to the same extent as if they had been injured by a driver covered by the required liability insurance. *See id.* Hence, to the extent a contract provision reduces the amount that an insured would otherwise recover, it has the effect of diluting or unduly

limiting uninsured motorist (UIM) coverage, contrary to this state's public policy.

I am convinced that allowing an insurer to force its insured to pay costs of arbitration that would otherwise be borne by the insurer by invoking the right to a trial *de novo* would have the effect of diluting UIM coverage. Therefore, I would hold that an insurer must pay the insured's arbitration costs if it exercises the right to a trial *de novo*. This conclusion follows both as a matter of contractual interpretation and as a logical requirement of the public policy against dilution of UIM coverage.

As noted previously, the rules of the AAA allow for the award of arbitration costs, and these rules are incorporated by reference into Allstate's policy. In addition, while the trial *de novo* clause provides, "Costs, including attorney fees, are to be are to be paid by the party incurring them," this language seems to refer only to the costs of trying the case in court, not to the costs of arbitration. A contrary interpretation is possible, but in light of the public policy against dilution of UIM coverage as well as the plain meaning of the language used, I would conclude that the Allstate policy entitles Huizar to recover the costs she incurred in arbitrating her claim without regard to whether Allstate demands a trial, and without regard to the result of such a trial.

Independently, even if Allstate had objected to the use of the AAA's rules and invoked the contract language calling for the use of an arbitration procedure where each party would bear its own costs of arbitration, I would hold that public policy requires an insurer to pay its insured's arbitration costs in the event the insurer exercises its right to a trial *de novo*. Otherwise, the insurer would be allowed to dilute UIM coverage, making the term requiring each side to bear its own costs of arbitration unenforceable once a trial *de novo* is demanded by the insurer.

By insisting on a trial, Allstate could force Huizar not only to bear the expenses of a second proceeding, but to pay costs of the first proceeding that Allstate would have had to pay in the absence of a trial.[3] This is

---

**3.** In my view, the insurer would not be entitled

to recover its arbitration costs in the event the

exactly the sort of hurdle that offends the public policy against dilution of UIM coverage recognized in *Terranova*, and I think this is the concern that underpins the majority opinion. I am not, however, prepared to take the additional step urged by Huizar and strike down the trial *de novo* clause as unenforceable.

The rationale and result I propose here would avoid extensive rewriting of the insurance contract. *See Griffin v. United Bank of Denver*, 198 Colo. 239, 242, 599 P.2d 866, 868 (1979). It also would prevent placing either party in a position not contemplated at the time the contract was made. By holding that the trial *de novo* provision does not violate the public policy underlying the uninsured motorist statute so long as the insurer does not force the insured to pay for an arbitration proceeding that is later rendered without effect, freedom of contract—and specifically the freedom to fashion a dispute resolution mechanism—would be preserved.

Just as importantly, this court should base its decision in an expressly stated public policy of Colorado. The role of the courts is to interpret and apply the law as adopted by the legislature, not to extrapolate from existing statutes to graft new principles onto the legislation actually approved by elected lawmakers or incorporated into the state constitution. *See Golden Animal Hosp. v. Horton*, 897 P.2d 833, 836 (Colo.1995); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo. 1994).

### B.

I will not engage in an extended discussion of the reasons why I believe that the trial *de novo* provision does not violate the speedy justice or arbitration provisions of the Colorado Constitution. It is well-established that imposition of an arbitration requirement as a condition of suit does not violate the right of access to the courts, even when the requirement is imposed by statute. *See State Farm Mut. Auto. Ins. Co. v. Broadnax*, 827 P.2d 531, 535–37 (Colo.1992). If the state can compel arbitration, then the public policy of Colorado is certainly not offended where private parties agree to a contractual term requiring arbitration, especially when the term allows for a subsequent trial *de novo*. In fact, we have upheld compulsory arbitration imposed by statute precisely because the statute in question allowed for a trial *de novo* as a matter of right. *See Firelock Inc. v. District Court*, 776 P.2d 1090, 1095–96 (Colo. 1989). The trial *de novo* clause is plainly consistent with our state's policy of providing speedy access to the courts.

As for the arbitration provision of the Colorado Constitution, we have expressly recognized that the public policy of Colorado favors the submission of disputes to arbitration. *See Dominion Ins. Co. Ltd. v. Hart*, 178 Colo. 451, 454, 498 P.2d 1138, 1140 (1972); *Red Carpet Armory Realty Co. v. Golden West Realty*, 644 P.2d 93, 94 (Colo. App.1982). This policy in favor of arbitration is embodied in our state constitution. *See* Colo. Const. art. XVIII, § 3. Accordingly, the legislature has adopted the Uniform Arbitration Act, a statute that provides for judicial enforcement of arbitration awards. *See* §§ 13–22–201 to –223, 5 C.R.S. (1997).

It does not follow, however, that a trial *de novo* clause contravenes this public policy in favor of arbitration. The absence of any statutory provision *requiring* arbitration for UIM claims, as opposed to allowing for enforcement of *voluntary* arbitration agreements, indicates that the public policy of Colorado is to allow private parties to arrange for binding arbitration in such cases by contract, not to make arbitration binding in situations where the parties have not agreed to do so. *Accord Cohen v. Allstate Ins. Co.*, 231 N.J.Super. 97, 555 A.2d 21, 23 (App.Div. 1989).

### C.

The majority alludes to the possibility that an insurance policy may bear certain similarities to a contract of adhesion. *See* maj. op. at 344–345. Under Colorado case law, however, insurance policies are not presumed to

---

insured demanded a trial *de novo*. The public policy embodied in the UIM statute prevents insurers from diluting coverage, but it does not protect insurers from being forced to bear the burden of duplicative litigation at the instance of an insured.

be adhesive. *See Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 288–89 (Colo.1981); *cf. Jones v. Dressel*, 623 P.2d 370, 374–75 (Colo. 1981). The terms of an insurance contract generally can be enforced where they are clear and unambiguous. *See FDIC v. American Cas. Co.*, 843 P.2d 1285, 1290 (Colo.1992); *Terranova*, 800 P.2d at 60. A clause in an insurance contract is ambiguous if it is reasonably susceptible to more than one meaning. *See Travelers Ins. Co. v. Jefferies–Eaves, Inc.*, 166 Colo. 220, 223, 442 P.2d 822, 824 (1968).

The meaning of the arbitration clause in Allstate's policy is unmistakable; either party is entitled to demand a trial if more than $25,000 is awarded in arbitration. Therefore, the term is enforceable notwithstanding the fact that it appears in an insurance contract. We have never held, as a matter of law, that a contract of insurance, without more, is an adhesion contract. To do so, of course, would have ramifications well beyond the dispute before us and would necessarily raise implications of monumental proportions that this case does not possess.

## III.

The analysis outlined above is reinforced by the absence of any factual basis in this record to determine, at this time, the practical effects of the trial *de novo* clause.

The UIM coverage provisions of the Allstate policy in this case, like many insurance policies, provides that when the insured and the insurer cannot agree on whether or how much the insured is entitled to collect, the matter may be submitted to arbitration at the request of either party. Admittedly, the Allstate policy at issue here adds a twist to the conventional agreement to arbitrate. By including a provision that allows either party to demand a trial on all issues if the arbitration award exceeds Colorado's financial responsibility limit, the policy allows the insurer or insured to seek judicial review when arbitration produces an award in excess of $25,000.[4] On the other hand, the policy confers no reciprocal right to go to court if the arbitration award is $25,000 or less.

In some situations, the insured might wish to take advantage of the trial *de novo* clause. For example, if the insurer demanded arbitration and the resulting award was less than what the insured had claimed but above the financial responsibility threshold, the insured might well be relieved that a trial *de novo* remained available. In the instant case, the insured asked for arbitration despite the fact that she apparently knew the value of the claims she sought would entitle the insurer to demand a trial if she persuaded the arbitrators to award the amount she had requested.[5]

On the other hand, the trial *de novo* provision is likely to favor the insurer in most cases in which it is used. As one commentator has noted, "[i]t is difficult to envision a situation in which an insured would be willing to gamble away a favorable decision on both liability and damages ... where he could wind up a total loser at the end of a trial."[6] Huizar contends that an insurer can use the threat of a trial to coerce the insured to accept less than the amount of the arbitration, even if both parties know that the award is fair, because the insured can be forced to clear another set of hurdles to obtain an enforceable judgment.

On this record, though, I am not persuaded that the trial *de novo* clause will have a drastic impact on the bargaining position of the insured in settlement negotiations. If the arbitration award is large, the insured

4. In this case, the base award—before the inclusion of interest and costs—exceeded the $25,000 threshold. In a case where the base award is $25,000 or less, but interest and costs push the total award above the financial responsibility limit, the award would likely be binding in its entirety. *Cf. Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 940–41 (Colo.1993) (attorney fees and other costs not included in calculating amount in controversy for jurisdictional purposes).

5. While neither party's counsel could say how much Huizar had sought initially, the record implies that she asked for more than the financial responsibility limit, because despite the fact that some of Huizar's claims were rejected by the arbitrator, the amount awarded exceeded $25,000.

6. Irvin E. Schermer, *Automobile Liability Insurance* 3d § 49.12 (1995).

may gain leverage against the insurer in further settlement negotiations. If the insurer insists on litigating in the face of an obviously valid claim, the insured can add a cause of action for bad faith against the insurer when the parties go to court. *See Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1272–76 (Colo.1985) (discussing standard applicable to "first-party" claims of bad faith delay or denial of benefits against insurers); *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1141 (Colo.1984) (recognizing the standard of conduct on the part of an insurer when dealing with claims arising under an insurance policy "must reflect [ ] the quasi-fiduciary relationship that exists between the insurer and the insured"); *Flickinger v. Ninth Dist. Prod. Credit Ass'n of Wichita,* 824 P.2d 19, 24 (Colo.App.1991) ("[A]n insurance carrier subjects itself to damages beyond the monetary payments called for by its policy, including punitive damages, if it fails in good faith to consider claims asserted under a policy issued by it. And this is true whether the claim is one asserted by the insured ... or by a third party against an insured ....") (citations omitted); *Bucholtz v. Safeco Ins. Co. of America,* 773 P.2d 590, 592–93 (Colo.App.1988) ("an insurer acts in bad faith in denying ... a ... claim when ... [it] knows or recklessly disregards the fact that its conduct is unreasonable"). The insured also has the option of seeking costs and attorney fees if the insurer maintains a substantially groundless or vexatious defense. *See* §§ 13–17–102 & –202, 5 C.R.S. (1997) (providing for award of attorney fees where defense lacks "substantial justification" and actual costs when judgment exceeds plaintiff's settlement offer).

In any event, the record in this case is bereft of any evidence demonstrating actual abuse of the trial *de novo* clause. If Huizar were able to develop a record after remand that supports the view that insurers use the trial *de novo* clause simply in order to obtain undue leverage in post-arbitration settlement discussions, I might be inclined to reach the same conclusion as the majority. In the absence of such support in the record, however, I would decline any invitation to interfere with a dispute resolution mechanism created by contract to any greater extent

than necessary to give effect to expressly stated public policy.

## IV.

Accordingly, because the trial *de novo* provision of the Allstate policy at issue here is not wholly in conflict with express Colorado public policy as announced by our General Assembly, and with due deference to principles of freedom of contract, I respectfully dissent.

I am authorized to say that Chief Justice VOLLACK joins in this dissent.

