**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 18, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAWRENCE COUNTRYMAN, on
behalf of himself and all others similarly
situated,

      Plaintiff - Appellant,

v.

FARMERS INSURANCE EXCHANGE,
an insurer, and owner of MID-CENTURY
INSURANCE COMPANY, a California
corporation; MID-CENTURY
INSURANCE COMPANY, a California
company,

      Defendants – Appellees.

No. 12-1456
(D.C. No. 1:10-CV-01075-REB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **MATHESON**, Circuit Judges.

---

Colorado enacted a statute in 2008 that requires motor vehicle liability insurance

policies to include coverage for medical payments.  This case asks us to determine

whether this statute forbids an insurer from limiting such coverage to two years.  We hold

it does not.

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Farmers Insurance Exchange and Mid-Century Insurance Company ("Defendants") issued policies in Colorado that cover "Med-pay" benefits with the following limitations: "reasonable and customary expense[s] for necessary medical services furnished *within two years* from the date of the accident." *Countryman v. Farmers Ins. Exch.*, 865 F. Supp. 2d 1108, 1110 (D. Colo. 2012) (emphasis added).

Lawrence Countryman bought one of these policies with Med-pay benefits coverage up to $25,000. He suffered serious injuries from a car accident that required care for several years. Defendants paid $14,920 in benefits for two years and then refused to pay further claims based on the policy's two-year limit.

Mr. Countryman filed a putative class action in state court for breach of contract and related claims. He alleged the two-year limit in Defendants' policies was void and unenforceable under C.R.S. § 10-4-635(1)(a) (the "Med-pay statute"), which provides in relevant part:

> [N]o . . . motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be . . . issued . . . in this state unless coverage is provided . . . for medical payments with benefits of five thousand dollars for bodily injury, sickness, or disease resulting from the ownership, maintenance, or use of the motor vehicle.

A separate provision of the Med-pay statute requires insurers to prioritize payments for medical services provided by trauma care providers. *Id.* § 10-4-635(2)(b).

Defendants removed the case to federal court by satisfying the Class Action Fairness Act's diversity and amount-in-controversy requirements. *See* 28 U.S.C. § 1332(d). They then successfully moved under Fed. R. Civ. P. 12(b)(6) to dismiss the claims regarding the two-year limit. The district court entered final judgment dismissing all claims. This appeal concerns only the two-year policy limit. We have jurisdiction under 28 U.S.C. § 1291.

## II.  **DISCUSSION**

### A. *Governing Law and Standard of Review*

"In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims . . . ." *Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). We review de novo a district court's statutory interpretation. *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009). "We review de novo a district court's [Rule 12(b)(6)] dismissal . . . applying the same legal standards as the district court." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

### B. *Statutory Interpretation in Colorado*

We take guidance from case law on interpreting Colorado statutes. "When interpreting a statute," a court's "task is to give effect to the intent of the general assembly." *Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006) (en banc). "When interpreting the general assembly's intent," a court should "turn first to the language of the statute," reading the "words and phrases in context and constru[ing] them literally according to common usage unless they have acquired a technical meaning

- 3 -

by legislative definition." *Id.*; *see also People v. Yascavage*, 101 P.3d 1090, 1093 (Colo. 2004) (en banc).

If the statutory language is "clear and unambiguous," our analysis ends. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo. 2000) (en banc). If the language is ambiguous, we turn to "other factors such as legislative history, the consequences of a given construction, and the end to be achieved by the statute." *Klinger*, 130 P.3d at 1031; *see also Yascavage*, 101 P.3d at 1093.

In Colorado, "a contractual provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy." *FDIC v. Am. 21 Cas. Co.*, 843 P.2d 1285, 1290 (Colo. 1992) (en banc). Colorado courts emphasize this principle in insurance cases, asking whether an insurance provision undermines legislative intent or offends public policy. *E.g.*, *Huizar v. Allstate Insur. Co.*, 952 P.2d 342, 344 (Colo. 1998) (en banc) (Colorado "courts have assumed a heightened responsibility to scrutinize insurance policies for provisions that unduly compromise the insured's interests and have concluded that any provision of an insurance policy which violates public policy and principles of fairness is unenforceable." (quotations omitted)); *see also Allstate Ins. Co. v. Avis Rent-A-Car System, Inc.*, 947 P.2d 341, 346 (Colo. 1997) (en banc); *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 589 (Colo. 1984) (en banc).

C. *Interpretation of the Med-Pay Statute*

This case requires us to determine whether the Med-pay statute permits Defendants' two-year medical coverage limit. Applying the principles of statutory

- 4 -

construction described above, we begin by examining the statutory language and then turn to legislative history and public policy.

1. **Statutory Language**

The Med-pay statute does not say whether an insurer may place time limits on Med-pay coverage. The silence could indicate intent to disallow any time limits or to allow whatever time limit an insurer may choose. Because the statute is susceptible to at least two reasonable interpretations, it is ambiguous. *See Grant v. People*, 48 P.3d 543, 548 (Colo. 2002) (en banc).

Mr. Countryman relies on *DeHerrera v. Sentry Insur. Co.*, 30 P.3d 167 (Colo. 2001) (en banc), which addressed an insurance statute that allowed a particular restriction in one of its parts but omitted the restriction in another part. The Colorado Supreme Court "presume[d] from the absence of this restriction that the legislature did not intend for it to apply." *Id.* at 173. But in *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748 (Colo. 1990) (en banc), the court said that "[i]n the absence of statutory inhibition, an insurer may impose any terms and conditions consistent with public policy which it may see fit." *Id.* at 750.

The Med-pay statute has no express inhibition on time limits. It does not authorize a restriction in one part but not another part. *Chacon* is therefore a better fit than *DeHerrera* for interpreting the Med-pay statute's silence. The better interpretation would allow time limits because the legislature could have forbidden them expressly if it had chosen to do so. Additionally, the Med-pay statute's minimum coverage limit of $5,000 is not large enough to be expected to cover significant or long-term medical care

after trauma care has been paid. This suggests the legislature did not intend to require all coverage to include open-ended time frames.[1] Nonetheless, because the statute is ambiguous, we examine legislative history and public policy to determine whether either points to a ban on time limits.

2. **Legislative History**

The legislative history of the Med-pay statute supports allowing the time limit at issue here.[2] The legislature started with bill SB 08-211, which provided minimum coverage of $25,000 and a minimum time limit of five years. It ended with another bill, SB 08-011, which became § 10-4-635 and provided minimum coverage of $5,000, prioritized payment for trauma care,[3] and was silent on a time limit. Elimination of the five-year time limit alone does not indicate whether the legislature authorized or prohibited time limits. But the reduction of minimum coverage to $5,000 and the prioritization of payment to trauma care providers point to allowing time limits sufficient to cover trauma care services and leaving any remaining coverage amount for follow up

---

[1] Mr. Countryman counters that § 10-4-635 imputes default coverage without time limits when a policy fails to provide Med-pay benefits and therefore implies time limits are forbidden. But this default provision does nothing to fill in the silence as to whether an insurer can write a policy with time limits.

[2] Mr. Countryman moved this court to take judicial notice of legislative history material that he wishes to supplement the record on appeal. We grant the motion. *See Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226-27 (1959).

[3] The statute requires the insurer to "reserve five thousand dollars of the medical payments coverage for the payment of trauma care," C.R.S. § 10-4-635(2)(b), and the trauma care providers must be paid first, *id*.

medical care.[4]  Nothing in the legislative history indicates that Med-pay was intended to provide coverage for indefinite care.  In short, the legislative history supports reading the language to allow time limits.

3. **Public Policy**

The legislative history reflects the following public policy considerations for the bills that were eventually enacted as the Med-pay statute:  (1) coverage for trauma care; (2) protection of accident victims who lose employer-provided health insurance;[5] and (3) keeping insurance premiums low.  Colorado courts have identified two further policy interests relevant to the Med-pay statute:  (4) "heightened responsibility" to protect the insured's interests "[b]ecause of both the disparity of bargaining power between insurer and insured and the fact that materially different coverage cannot be readily obtained elsewhere," *Huizar*, 952 P.2d at 344; and (5) freedom of contract, *Shelter Mut. Insur. Co.v. Mid-Centry Ins. Co.*, 246 P.3d 651, 662 (Colo. 2011) (en banc).

If the statute's only public policy goal were coverage for trauma care, then allowing a time limit for coverage would be a reasonable interpretation because trauma care occurs immediately following an accident.  The second goal of providing protection

---

[4] Mr. Countryman contends that such an interpretation is problematic because it could be extended to allow insurers to issue policies with limits as short as 72 hours. Such a short time frame would be more likely to conflict with the legislative purpose and public policy goals of the statute than does the two-year limit.  But we do not face that issue here.

[5] The district court emphasized that SB 08-011, which eventually became the Med-pay statute, originally focused on payment for first responder trauma care.  But the final statute went beyond trauma care to include "all medically necessary and accident-related health care and rehabilitation services." C.R.S. § 10-4-635(2)(a), (5)(e).  The statute covers medical expenses for non-trauma treatment.  *Id.* (2)(c).

for accident victims goes beyond coverage for trauma care but does not answer whether Med-pay was supposed to be an indefinite substitute for health insurance.  The third goal of keeping premiums low suggests it was not.  The final two public policies articulated in Colorado case law—protecting the insured against unequal bargaining power and protecting freedom of contract—conflict with one another.

Taking these policy goals together, they do not provide clear direction whether the statute's silence is meant to allow or prohibit time limits.  None of these policy goals is wholly inconsistent with the two-year time limit on Med-pay coverage.  Moreover, "a policy term is not void as against public policy simply because it narrows the circumstances under which coverage applies." *Farmers Ins. Exch. v. Chacon*, 939 P.2d 517, 520 (Colo. App. 1997).

\* \* \*

We conclude that the statutory language, though ambiguous, is more amenable to allowing time limits than prohibiting them.  The legislative history leans in the same direction.  The multiple public policy considerations lend support to both sides but do not determine the issue.  We therefore hold that Defendants' policy does not violate Colorado's Med-pay statute, C.R.S. §10-4-635(2)(a).

## III.  **CONCLUSION**

We affirm the district court's judgment.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge