**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 29, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEFFREY ALLEN,

      Plaintiff - Appellant,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

      Defendant - Appellee.

No. 17-1282

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-01056-RM-NYW)**

John M. DeStefano, of Hagens Berman Sobol Shapiro LLP, Phoenix, Arizona
(Robert B. Carey, of Hagens Berman Sobol Shapiro LLP, Colorado Springs,
Colorado, on the briefs), for Plaintiff-Appellant.

Jeremy A. Moseley (John M. Vaught and Julian R. Ellis, Jr. with him on the
brief), of Wheeler Trigg O'Donnell LLP, Denver, Colorado, for Defendant-
Appellee.

Before **BRISCOE**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Plaintiff-Appellant Jeffrey Allen was injured in a car accident in May 2013. His automobile insurance policy includes coverage for medical expenses arising from car accidents, but this coverage contains a one-year limitation period such that he cannot obtain reimbursement for medical expenses that accrue a year or more after an accident. Mr. Allen, who seeks reimbursement for medical expenses accruing more than a year after his accident, argues that this limitation period is invalid for two separate reasons. First, he claims that, because a 2012 disclosure form that his insurer sent him stated that his policy covers reasonable medical expenses arising from a car accident, Colorado's reasonable-expectations doctrine renders the one-year limitations period unenforceable. Second, Mr. Allen argues that Colorado's MedPay statute, which requires car insurance companies to offer at least $5,000 of coverage for medical expenses, prohibits placing a one-year time limit on this coverage. The district court granted summary judgment in favor of Mr. Allen's insurer, Defendant-Appellee United Services Automobile Association ("USAA"). We now reject both of Mr. Allen's arguments and, exercising jurisdiction under 28 U.S.C. § 1291, **affirm** the district court's order.

## I

Mr. Allen was insured under a car insurance policy purchased by his wife, Ellen Allen, from USAA. As relevant here, the policy's coverage period ran from December 5, 2012 to June 5, 2013, though Ms. Allen obtained the policy years

2

before that.  The policy included $100,000 of coverage for "medical payments."

Aplt.'s App., Vol. III, at 711 (Auto Policy Renewal Declarations, filed Oct. 26,

2017) (capitalization omitted).  The policy stated that USAA "will pay only the

medical payment fee for medically necessary and appropriate medical services"

and that "[t]hese fees and expenses must . . . [r]esult from [a bodily injury]

sustained by a covered person in an auto accident; and . . . [b]e incurred for

services rendered within one year from the date of the auto accident."  *Id.*, Vol. I,

at 203 (Ex. A-2 to Def.'s Statement of Undisputed Facts, filed Oct. 26, 2017).

While the policy initially contained a three-year limitation period for medical

payments, USAA sent Ms. Allen a disclosure in 2006 informing her of "Important

Changes to Your Auto Policy," which included that the "time limit for Medical

Payments Coverage is reduced from three years . . . to one year from the date of

[an] accident."  *Id.* at 177 (Ex. A-1 to Def.'s Statement of Undisputed Facts, filed

Oct. 26, 2017).  It is undisputed that, notwithstanding this change to her policy,

Ms. Allen renewed it in December 2006 and continued to renew it thereafter until

the car accident that forms the basis of this case occurred.

In 2012, USAA sent the Allens a "Summary Disclosure Form" that

purported to be "a basic guide to the major coverages and exclusions in your

policy."  *Id.* at 222 (capitalization omitted).  The disclosure form stated that it

was "not a policy of any kind," and instructed the Allens to "please read your

policy for complete details" because "this summary disclosure form shall not be

3

construed to replace any provision of the policy itself." *Id.* (capitalization omitted). The disclosure form discussed the Allens' "[m]edical payments coverage" under their policy. *Id.* at 224. It stated that this "[m]edical payments coverage pays for you and your passengers['] reasonable health care expenses incurred for bodily injury caused by an automobile accident." *Id.* The portion of the disclosure form discussing medical-payments coverage further instructed the Allens to "[p]lease read your policy for other conditions and exclusions." *Id.*

In May 2013, within the policy's coverage period, Mr. Allen was involved in a car accident. Mr. Allen began suffering lower back pain shortly afterward. The policy provided coverage for up to $100,000 worth of medical payments within the one-year limitation period. According to a clinical assessment carried out about a year after the accident, Mr. Allen's pain "range[d] anywhere from mild to severe on a daily basis." *Id.*, Vol. III, at 625 (Ex. A-2 to Pl.'s Resp. to Def.'s Statement of Facts, filed Oct. 26, 2017). By June 2014, when the one-year limitation period on medical-payments coverage under Mr. Allen's policy had ended, USAA had paid out about $18,000 of the $100,000 coverage amount. Mr. Allen continued to receive medical treatment for problems stemming from the accident, but USAA refused to make further payments because the limitation period had been reached.

In May 2016, Mr. Allen brought a class action suit against USAA, on behalf of "all insureds of [USAA]," in federal district court in Colorado. *Id.*, Vol.

4

I, at 10 (Class Action Compl., filed Oct. 26, 2017). He alleged diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Mr. Allen sought damages for, *inter alia*, breach of contract, the tort of bad faith, and deceptive trade practices, all under Colorado law. He also asked for declaratory relief that would have the effect of vitiating the time limits for medical-payments coverage in class members' policies.

USAA filed an Answer to Mr. Allen's complaint in September 2016. In December 2016, USAA moved for summary judgment, and the district court granted this motion in July 2017. The district court entered final judgment against Mr. Allen on July 10, 2017, and Mr. Allen timely appealed.

## II

"We review a district court's summary-judgment order de novo," and summary judgment "is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1283 (10th Cir. 2018) (quoting FED. R. CIV. P. 56(a)). As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And disputes are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* We "view the evidence and draw reasonable inferences therefrom in the light

5

most favorable to the nonmoving party" at the summary-judgment stage. *Dullmaier*, 883 F.3d at 1283 (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogated in part on other grounds as recognized in Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014)).

## III

### A

Mr. Allen first argues that the one-year time limit on medical-payments coverage is unenforceable because it violates Colorado's reasonable-expectations doctrine. More specifically, Mr. Allen points to the disclosure form USAA sent to his wife and him in 2012 that outlined the basic parameters of their coverage; he claims that, due to language in this disclosure form, he could have reasonably expected that there would be no time limit attached to medical-payments coverage under the policy.[1]

---

[1] At the threshold, USAA contends that any statutory obligation to disclose its medical-payments coverage "was owed to Ms. Allen as the applicant and policyholder," and "not to" Mr. Allen, as merely a "covered party." Aplee.'s Resp. Br. at 24–25. Not surprisingly, Mr. Allen disputes this assertion and contends that his "claims do not depend on his status as a purchaser" of the USAA policy. Aplt.'s Reply Br. at 10; *see id.* at 11 ("The time limit is unenforceable as to *any* insured because it violates that expectation."). We need not resolve this dispute. Even assuming that, as a matter of law, USAA owed the same disclosure obligation to Mr. Allen that it owed to his wife, Mr. Allen has not demonstrated (for reasons explicated *infra*) that USAA failed to satisfy this obligation. For similar reasons, we do not address USAA's "no-private-right-of-
(continued...)

6

Colorado's "doctrine of reasonable expectations" "renders exclusionary language [in an insurance policy] unenforceable . . . where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable insured would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain he or she is not." *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1043 (Colo. 2011).[2] "In order for reasonable expectations to prevail over exclusionary policy language, an 'insured must demonstrate through extrinsic evidence that its expectation[s] of coverage [are] based on specific facts which make these expectations reasonable.'" *Id.* at 1054 (alterations in original) (quoting *O'Neill Investigations, Inc. v. Ill. Emp. Ins. of Wausau*, 636 P.2d 1170, 1177 (Alaska 1981)). "These specific facts must show that, through procedural or substantive deception attributable to the insurer, an objectively reasonable insured would have believed he or she possessed coverage later denied by an insurer." *Id.*

---

[1](...continued)
action" argument, which generally contends that Mr. Allen's "claims challenging the content of USAA's 2012 disclosure form are an end run around Colo. Rev. Stat. § 10-4-636's exclusive remedial scheme." Aplee.'s Resp. Br. at 20.

[2]      There is also a second circumstance, beyond the deception of an insured by an insurer, where the reasonable-expectations doctrine comes into play: "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue," *Bailey*, 255 P.3d at 1043. Mr. Allen does not argue that this theory of reasonable expectations applies in this case.

Mr. Allen thinks that the 2012 disclosure form was "deceptive" because it promised coverage for "reasonable health care expenses" arising from a car accident, whereas the policy provided time limits on coverage without regard to whether expenses accruing after the expiration of such limits were also "reasonable" or "accident related." *See* Aplt.'s Opening Br. at 9. However, after studying the disclosure form, we conclude that Mr. Allen is incorrect—*viz.*, a reasonable jury could not conclude that, because of the disclosure form, "an ordinary, objectively reasonable insured would be deceived into believing that he or she is entitled to coverage" for medical expenses on a time-unlimited basis. *Bailey*, 255 P.3d at 1043.

The 2012 disclosure form is a four-page-long document that USAA sent to the Allens. *See* Aplt.'s App., Vol. III, at 743–46. The form is entitled "SUMMARY DISCLOSURE FORM" and states on its first page that "[t]his summary disclosure form is a basic guide to the major coverages and exclusions in your policy. It is a general description. It is not a policy of any kind." *Id.* at 743. The disclosure form further directs the insured—in bolded, capital letters—to "PLEASE READ YOUR POLICY FOR COMPLETE DETAILS. THIS SUMMARY DISCLOSURE FORM SHALL NOT BE CONSTRUED TO REPLACE ANY PROVISION OF THE POLICY ITSELF." *Id.* (bold-face font omitted). This text is easily the most prominent feature on the first page of the disclosure form.

8

The disclosure form includes a subsection describing the "Medical Payments Coverage" of the Allens' policy. *Id.* at 745. Mr. Allen argues that this subsection creates a reasonable expectation of time-unlimited coverage. Specifically, he points to a portion of the subsection that states: "Medical payments coverage pays for you and your passengers['] reasonable health care expenses incurred for bodily injury caused by an automobile accident." *Id.* This subsection further elaborates that in the event of an accident, "your medical payments coverage will pay before your health insurance coverage," and that "[m]edical payments coverage will apply toward health coverage coinsurance or deductible amounts." *Id.* Finally, the subsection admonishes the insured to "[p]lease read your policy for other conditions and exclusions." *Id.*

Mr. Allen argues that the disclosure form makes the one-year limitation period unenforceable because it creates a reasonable expectation on the part of the insured that he or she will receive coverage for all reasonable medical expenses arising from an accident (up to the policy limit), regardless of when those expenses are incurred. As Mr. Allen puts it: "Common and necessary accident-related health care expenses will naturally arise more than a year after the accident—physical therapy, occupational therapy, surgical treatments used as a last resort . . . or a reluctant patient's attitude or pain tolerance can all delay treatment" beyond the one-year mark. Aplt.'s Opening Br. at 15.

9

But Mr. Allen's argument to this effect fails because, when viewed as a whole, the 2012 disclosure form is simply not deceptive. To begin with, the form never explicitly states that the time limit for medical-payments coverage is unlimited. Moreover, the form instructs the insured to "read your policy for other conditions and exclusions," Aplt.'s App., Vol. III, at 745, and, as the district court correctly observed, the policy's information regarding the one-year limitation period "is not buried knee-deep in legalese or small print" but rather, "is easily readable and accessible under the part of the policy labeled 'MEDICAL PAYMENTS.'" *Id.* at 779 (Op. & Order, dated July 10, 2017). The form's language is also not independently deceptive; on the contrary, it tracks the model disclosure language released by the Colorado Department of Insurance. *See* 3 Colo. Code Regs. § 702-5:5-2-16 (containing the model language).

Additionally, as noted *supra*, the form instructs readers that it is "not a policy of any kind" and tells them to "please read your policy for complete details." Aplt.'s App, Vol. III, at 743. It holds itself out as no more than "a *basic guide* to the major coverages and exclusions in your policy," and thus as only "*a general description*" of the policy's terms. *Id.* (emphases added).

For these reasons, the district court was correct to conclude that Colorado's reasonable-expectations doctrine does not supply a means to circumvent the policy's one-year limitation period for medical-payments coverage. The 2012 disclosure form simply did not amount to a "deception." *Bailey*, 255 P.3d at

10

1053. This is not a case like *Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo. 1986), where the Colorado Supreme Court invalidated an exclusionary insurance policy term that was written in tiny, "light grey type on white paper," and where the insurer "made a 'concerted effort' to discourage persons from reading" the exclusionary language. 712 P.2d at 992. Rather, this case much more closely resembles *2-BT, LLC v. Preferred Contractors Insurance Co. Risk Retention Group, LLC*, No. 12-cv-02167-PAB-KLM, 2013 WL 5729932 (D. Colo. Oct. 18, 2013) (unpublished), where a Colorado federal district court found under Colorado law that there was no deception where the insured party had been exhorted to "Please read all portions of [its] policy carefully" because "there are a number of . . . terms that may delete, modify or expand the coverage provisions stated elsewhere in the policy." 2013 WL 5729932, at *9 (capitalization omitted).

Because the policy's exclusionary language was easily accessible and unambiguous, and because an objectively reasonable person would not, upon reading the 2012 disclosure form, have been deceived into thinking that it created a promise of time-unlimited medical-payments coverage, the district court was correct to reject Mr. Allen's reasonable-expectations theory.[3] Put another way,

---

[3] Mr. Allen also argues, in a footnote, that the district court "abused its discretion by granting summary judgment without an adequate opportunity for discovery into USAA's state of mind." Aplt.'s Opening Br. at 27 n.3. However, Mr. Allen, in his cursory argument on this score, does not specify what discovery materials he seeks or why those materials would be germane to the present appeal.

(continued...)

11

Mr. Allen has not shown that, through "deception attributable to the insurer, an objectively reasonable insured would have believed he or she possessed coverage later denied by [the] insurer." *Bailey*, 255 P.3d at 1054.

The Colorado Supreme Court has made clear that we are not to use the reasonable-expectations doctrine to expand coverage "on a general equitable basis." *Id.* (quoting *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995)); *see also Craft v. Philadelphia Indemnity Ins. Co.*, 343 P.3d 951, 960 (Colo. 2015) (noting that the reasonable-expectations doctrine is "a means of avoiding an unfair result *where the insurer has engaged in some sort of deception*" (emphasis added)). In the absence of a showing of deception, therefore, we hold that the reasonable-expectations doctrine does not avail Mr. Allen.

**B**

Mr. Allen advances a second argument for why the policy's one-year time limit on medical-payments coverage is unenforceable: specifically, he contends

---

[3](...continued)
He has therefore waived this argument. *See Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015) (stating that arguments that are "not adequately developed in a party's [opening] brief" are waived); *accord Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (stating that "[i]ssues will be deemed waived if they are not adequately briefed" (quoting *Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002))).

that it is prohibited by Colorado's MedPay statute, COLO. REV. STAT. § 10-4-635.[4]

But this argument is also without merit: stated briefly, nothing in the plain text of the MedPay statute prohibits insurance companies from including a time limit on medical-payments coverage. Therefore, we reject Mr. Allen's second argument. We explicate our reasoning below.

We apply Colorado law in determining how best to interpret a Colorado statute in a case resting on diversity jurisdiction. *See, e.g.*, *Parish Oil Co., Inc. v. Dillon Companies, Inc.*, 523 F.3d 1244, 1248 (10th Cir. 2008) ("As we are sitting in diversity and construing a Colorado statute, we must give it the meaning it would have in the Colorado courts."). Under Colorado law, the "primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent." *Lewis v. Taylor*, 375 P.3d 1205, 1209 (Colo. 2016). To do this, Colorado courts "look to the plain meaning of the statutory language and consider it within the context of the statute as a whole. If the statutory language is clear, [Colorado courts] apply it as such." *Id.* (citing *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011)). Moreover, "[i]n the absence of statutory inhibition, an insurer may impose any terms and conditions [in an insurance agreement]

---

[4]      Mr. Allen sometimes characterizes this issue, without specificity, as whether placing a time limit on medical-payments coverage violates Colorado's "public policy." Aplt.'s Opening Br. at 2; Aplt.'s Reply Br. at 20. However, his exposition of this issue clarifies that he actually believes such a time limit is "unenforceable because it violates public policy *as expressed in* the Med Pay statute." Aplt.'s Reply Br. at 22 (emphasis added).

consistent with public policy which it may see fit." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).

The MedPay statute requires that all automobile insurance policies issued in Colorado provide at least $5,000 of coverage "for medical payments . . . for bodily injury, sickness, or disease resulting from the ownership, maintenance, or use of [a] motor vehicle." COLO. REV. STAT. § 10-4-635(1)(a). The statute further provides that "medical payments benefits shall be paid to persons providing medically necessary and accident-related trauma care or medical care." *Id.* § 10-4-635(2)(a). The MedPay statute also sets up an order of priority for payments, so that "licensed ambulances or air ambulances that provide trauma care at the scene of or immediately after" a car accident receive payment from the medical coverage first; trauma physicians who provide trauma care to the insured receive payments next; trauma centers receive payments after the physicians; and other healthcare providers obtain payment from the policy's remaining balance. *Id.* § 10-4-635(2)(b)(I)–(IV). In short, the MedPay statute sets up a regime under which Colorado car insurance policies are required to finance a minimum of $5,000 in payments to medical providers; however, the statute says nothing about whether car insurance companies can establish time limits for the collection of those medical benefits.

Mr. Allen does not contest the fact that the MedPay statute is silent as to whether an insurer may include a time limit on medical-payments coverage in an

14

insurance agreement.  *See* Aplt.'s Opening Br. at 32 ("The statute limits Med Pay coverage in scope and amount but not time.").  Instead, he claims that we should infer from the statute's silence a prohibition on such time limits.  We decline to do so, because under Colorado law, we are not at liberty to "supply the missing [statutory] language" that a party believes should have been included in a statute, but "must respect the legislature's choice of language." *Turbyne v. People*, 151 P.3d 563, 568 (Colo. 2007) (citing *Colo. Dep't of Revenue v. Hibbs*, 122 P.3d 999, 1004 (Colo. 2005)); *accord Colo. Dep't of Labor and Emp't v. Esser*, 30 P.3d 189, 196 (Colo. 2001) ("In selecting its statutory wording, the General Assembly did not require a mental impairment claimant to present 'live' or 'oral' or 'verified' or 'under oath' testimony of a licensed physician or psychologist. To add these words to the statutory provision would undermine the General Assembly's intent to provide a speedy, efficient, and timely presentation of facts to the agency decision-makers by claimants who may or may not be represented by counsel.").

Our interpretation of the MedPay statute is informed by *Coats v. Dish Network, LLC*, 350 P.3d 849 (Colo. 2015), where the Colorado Supreme Court refused to add language to a statute that would have expanded the scope of activities protected under the statute.  In *Coats*, the plaintiff-petitioner, Mr. Coats, was fired from his job after using medical marijuana—an activity that Colorado law permits but federal law prohibits.  Mr. Coats argued that a Colorado statute,

15

COLO. REV. STAT. § 24-34-402.5, which prohibits firing an employee for the employee's "lawful" activities outside of work, should have protected him. Mr. Coats contended that the term "lawful" in the statute "should be read as limited to activities lawful under state law." *Coats*, 350 P.3d at 852. The Colorado Supreme Court, however, refused to read such limiting language into the statute, "declin[ing] Coats's invitation to engraft a state law limitation onto the statutory language." *Id.*; *see also id.* ("Nothing in the language of the statute limits the term 'lawful' to state law."). As in *Coats*, so too here: nothing in the language of the MedPay statute restricts the ability of insurers to place time limits on medical-payments coverage. Accordingly, we decline Mr. Allen's invitation to engraft such a provision onto the statute.

Mr. Allen argues that subsection 635(1)(c) of the MedPay statute requires "time-unlimited coverage" in the event that an insurer "fails to offer the required [MedPay] coverage." Aplt.'s Opening Br. at 32 (emphasis omitted). He reasons therefore that the MedPay statute should be read to prohibit time limits of any sort. We are unpersuaded. This argument is belied by subsection 635(1)(c)'s text, which states: "If the insurer fails to offer medical payments coverage or fails to maintain or provide proof that the named insured rejected medical payments coverage in the manner required by this section, the insured's policy shall be presumed to include medical payments coverage with benefits of five thousand dollars." COLO. REV. STAT. § 10-4-635(1)(c). This language says nothing about

16

establishing time-unlimited coverage, nor does it purport to restrict insurers from imposing time limits on medical-payments coverage. For instance, even if an insurer fails to offer a particular insured medical-payments coverage, nothing in the statutory text prohibits the insurer from imposing a time limit otherwise present in its policy language on the medical-payments coverage that the statute would presume to be included in that insured's policy. Moreover, to state the obvious, Mr. Allen's argument depends on applying the statute's ostensible prohibition on time limits—expressly found (so the argument goes) in a context where an insurer has failed to comply with statute's mandate, insofar as it has not offered any MedPay coverage at all—to a setting where, as here, the insurer actually complied with the statute's mandate by offering such coverage. Yet, Mr. Allen does not offer a persuasive explanation for why it makes sense to infer that the Colorado legislature contemplated such an application to this dissimilar setting of compliance—especially because, as noted, no such time limits appear in the plain terms of the statutory grant of MedPay coverage.

Mr. Allen also argues that the MedPay statute's purpose and legislative history support reading the statute as prohibiting time limits on medical-payments coverage. However, we decline to venture beyond the statute's plain text, since we do not find the MedPay statute to be ambiguous (i.e., we do not think that the text of the MedPay statute is susceptible to more than one meaning, at least as regards the question presented in this case). *Meardon v. Freedom Life Ins. Co. of*

17

*Am.*, 417 P.3d 929, 934 (Colo. App. 2018) (stating that "we may not consider [a

statute's] legislative history" "because there is nothing ambiguous about that

statute"); *People v. McCoy*, --- P.3d ----, 2015 WL 3776920, at *7 (Colo. App.

2015) (noting that "we do not consider this [legislative] history because the

statute's terms are unambiguous"), *cert. granted in part on other grounds*, 2016

WL 5723893 (Colo. Oct. 3, 2016).[5]

---

[5]     To be sure, we recognize that, in holding that the MedPay statute does not prohibit an insurer from imposing a two-year limit on medical-benefits coverage, a panel of our court concluded that the MedPay statute is "ambiguous." *Countryman v. Farmers Ins. Exch.*, 545 F. App'x 762, 765 (10th Cir. 2013) (unpublished).  However, *Countryman* is a nonprecedential decision and thus not binding on us.  *See* 10TH CIR. R. 32.1.  And, after careful examination of the statute's text, we are constrained to respectfully disagree with the *Countryman* panel.  *Countryman* correctly noted that, under Colorado law, a statute is ambiguous when "multiple interpretations [of the statute] are reasonable." *Grant v. People*, 48 P.3d 543, 548 (Colo. 2002) (citing *State v. Nieto*, 993 P.2d 493, 502 (Colo. 2000)); *accord Lewis*, 375 P.3d at 1209 (concluding that a statute is "ambiguous" where it is "reasonably susceptible to multiple meanings").  But *Countryman* reasoned that the MedPay statute was ambiguous merely because it was silent about "whether an insurer may place time limits on Med-pay coverage." *Countryman*, 545 F. App'x at 764.  More specifically, the panel concluded that the statute was ambiguous because "[t]he silence could indicate intent to disallow any time limits or to allow whatever time limit an insurer may choose." *Id.*  However, contrary to *Countryman*'s logic, Colorado law makes clear that silence does not make both of these interpretations "reasonable." *Id.* The interpretation that would prohibit time limits depends on adding terms to the plain text of the statute that would have this prohibitory effect, whereas the one that would permit an insurer to impose time limits does not.  Because Colorado law obliges us to respect "the legislature's choice of language" and eschew adding terms to a statute's plain text under the guise of interpreting it, the latter interpretation—that would permit time limits—is *the* reasonable one. *Turbyne*, 151 P.3d at 568; *see Coats*, 350 P.3d at 852 ("Nothing in the language of the statute limits the term 'lawful' to state law.").  Indeed, even the *Countryman*

(continued...)

18

Accordingly, we reject Mr. Allen's argument that the MedPay statute prohibits the one-year time limit on medical-payments coverage contained in his policy—resting our conclusion solely on that statute's plain text, which contains no such limitation. *Cf. Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, --- U.S. ----, 138 S. Ct. 1061, 1072 (2018) ("Even assuming clear [statutory] text can ever give

---

[5](...continued)
panel acknowledged that "[t]he better interpretation would allow time limits because the legislature could have forbidden them expressly if it had chosen to do so," 545 F. App'x at 765; in our view, the panel simply drew the wrong inference from the legislature's failure to forbid time limits in concluding that the statute was ambiguous. Our interpretation of Colorado law is also consistent with Colorado's commitment to the freedom of contract in the insurance context. *See Bailey*, 255 P.3d at 1047 (noting Colorado's "strong commitment to the freedom of contract" and that, "[e]ven within the context of statutorily mandated insurance, insurers are free to include conditions and exclusions that are not inconsistent with Colorado's mandatory insurance laws"); *Chacon*, 788 P.2d at 750 ("In the absence of statutory inhibition, an insurer may impose any terms and conditions consistent with public policy which it may see fit.").

Tellingly, in the one Colorado Supreme Court case that *Countryman* cites in support of its logic—*Grant*, 48 P.3d at 548— the court's holding of ambiguity did not turn on an inference of ambiguity from mere statutory silence. Rather, the holding stemmed from the court's recognition that the Colorado legislature had used the key language in dispute—that is, "in writing"—in "varied" ways relative to the question of whether any "writing" must be accompanied by a signature and, therefore, as the court reasoned, "multiple interpretations [of the statute were] reasonable" and the statute's language was "ambiguous." *Id. Countryman* did not identify any circumstances analogous to *Grant* in the context of the MedPay statute (e.g., varied legislative interpretations of key statutory phrases), nor has Mr. Allen identified any. Therefore, *Countryman*'s reliance on *Grant* for the proposition that ambiguity could be inferred from mere statutory silence was misplaced. And, more generally, we respectfully decline to adopt the *Countryman* panel's holding that the MedPay statute is ambiguous regarding whether it prohibits an insurer from imposing time limits on medical-payments coverage.

19

way to purpose, [the petitioner] would need some monster arguments on this score to create doubts about [the statute's] meaning.").[6]

* * *

In sum, we hold that the one-year time limit in Mr. Allen's insurance policy is enforceable. This is so because we conclude, as a matter of law, that the 2012 disclosure form is not deceptive and because the plain language of the MedPay statute does not prohibit such time limits.[7]

---

[6] In 2015, a federal district court certified to the Colorado Supreme Court questions about the permissibility under Colorado law of an insurer imposing a time limit on MedPay coverage. *See Nguyen v. Am. Family Mut. Ins. Co.*, No. 15-cv-0639-WJM-KLM, 2015 WL 5867266, at *6 (D. Colo. Oct. 8, 2015) (unpublished). Though Mr. Allen "set forth his arguments for invalidating the time limit" in this appeal, Aplt.'s Opening Br. at 31, he also urged this court to "stay its hand" pending the Colorado Supreme Court's answer to the questions certified in *Nguyen*, *id.* at 30. However, Mr. Allen has advised us that, after oral argument in this case, the Colorado Supreme Court expressly declined to answer the questions certified in *Nguyen*. *See* Citation of Supp. Authority, No. 17-1282, at 1 (10th Cir., filed Oct. 22, 2018) (attaching Or. of Ct., *Nguyen v. Am. Family Mut. Ins. Co.*, No. 2015SA346 (Colo. Oct. 19, 2018)). Mr. Allen's request to abate this appeal is therefore moot.

[7] We underscore that our task here is simply to give effect to the plain statutory language that the Colorado legislature selected. If, as a consequence of our decision, insurers are tempted "to issue policies with limits as short as 72 hours," or other arguably miserly time limits on medical-payments coverage, the Colorado legislature could conceivably conclude that such time limits "conflict with the legislative purpose and public policy goals of the statute" and re-write the statute to prohibit policy provisions containing them. *Countryman*, 545 F. App'x at 765 n.4. Or, of course, the legislature could reach a contrary conclusion and choose to do nothing on this matter. Either way, the choice would involve policy concerns that fall squarely within the province the Colorado legislature—not a federal court sitting in diversity. And we offer no opinion

(continued...)

20

## IV

In conclusion, we **AFFIRM** the district court's order granting summary judgment in favor of USAA.

---

[7](...continued)
regarding the legal dimensions of such a hypothetical circumstance.